EXHIBIT 3

**This Opinion is Not a Precedent of the TTAB**

Mailed: July 14, 2025

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*Zero Technologies, LLC*

v.

*Hangzhou Yilin Technology Research Co., Ltd.*

———

Cancellation No. 92081980

———

Lisa A. Dunner and Adam W. Sikich of Dunner Law PLLC and David R. Lipson of Raphael Bellum PLLC, for Zero Technologies, LLC.

Xionghui Murong of YK Law LLP, for Hangzhou Yilin Technology Research Co., Ltd.

———

Before Pologeorgis, Lebow and O'Connor, Administrative Trademark Judges.

Opinion by O'Connor, Administrative Trademark Judge:

Hangzhou Yilin Technology Research Co., Ltd. ("Respondent") owns Registration No. 6870150 for the standard character mark ZEROLIQUID, registered on the Principal Register, for use in connection with:

> Apparatus for filtering drinking water; filters for drinking water; filters for fluids, namely, for water and area-water solutions; water filters; water purification and filtration apparatus; water treatment equipment, namely, cartridge filtration units; water treatment equipment, namely, water

> filtration units; water treatment equipment, namely, water filtration units and reverse osmosis units, in International Class 11.[1]

The application that matured into Respondent's registration was filed on September 9, 2021 under Trademark Act Section 1(a), based upon a claim of first use anywhere and in commerce at least as early as June 11, 2021.

Zero Technologies, LLC ("Petitioner") seeks to cancel Respondent's registration under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), on the ground that Respondent's mark so resembles Petitioner's mark ZEROWATER (in standard characters), registered on the Principal Register for "water filtering units for household use" in International Class 11,[2] that it is likely to cause confusion, to cause mistake or to deceive.[3]

In its answer, Respondent admitted some allegations that we reference below to the extent pertinent, but otherwise denied the salient allegations in the petition.[4]

---

[1] Issued on October 11, 2022.

[2] Registration No. 2802616 issued on January 6, 2004 from an application filed on February 25, 1999. Petitioner's predecessor in interest disclaimed exclusive rights in the term "WATER" in the mark, which was originally registered in the form ZERO WATER and later amended to ZEROWATER. The registration has been maintained, with an affidavit of incontestability filed in 2009 and the most recent renewal accepted in 2024. 1 TTABVUE 9-10; 12 TTABVUE 28.

Citations to the record and briefs reference TTABVUE, the Board's online docket system. The number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page number(s) where the cited material appears.

[3] In its petition, Petitioner also claimed priority based on earlier common law use of the ZEROWATER mark in commerce, 1 TTABVUE 6, ¶¶ 31-32, and later provided testimony that it sells other filtration goods under the mark in addition to those identified in its registration, such as water filters. *See, e.g.,* 10 TTABVUE 3, ¶ 5. However, as Petitioner does not base its likelihood of confusion arguments on common law rights of a scope broader than its registered rights, we confine our analysis to the parties' respective registrations.

[4] 4 TTABVUE. Respondent did not assert any affirmative defenses. *See id.*

The case is fully briefed. For the reasons discussed below, we grant the petition to cancel.

## I. Evidentiary Issues

We first consider several evidentiary issues. In a footnote within its brief, Petitioner objects to Respondent's introduction of third-party registrations in its First Notice of Reliance "because Respondent incorrectly identified them as printed publications."[5] Petitioner, however, does not contend that Respondent's First Notice of Reliance failed to comply with the provisions for introducing official records found in Trademark Rule § 2.122, 37 C.F.R. § 2.122(e) and (g), or the related section of the Trademark Trial and Appeal Board Manual of Procedure (TBMP), § 704.03(b)(1)(B) (June 2025), regarding introducing third-party registrations, only that Respondent misnamed them. Petitioner's objection to the third-party registrations elevates form over substance and is overruled.[6]

Respondent objects to portions of the testimony and an exhibit offered by Petitioner's Senior Product Marketing Manager, Brittany M. Siegle, to support its claim of actual confusion. Ms. Siegle testified:

> 12. We have received numerous complaints from owners of ZEROWATER®-branded pitchers regarding the lesser quality of ZEROLIQUID-branded replacement filters that they purchased believing were manufactured and sold by

---

[5] 24 TTABVUE 19, n.2 (discussing 14 TTABVUE).

[6] Even if this were a proper ground for objection, it would be a curable procedural defect that Petitioner waived by not raising it promptly when Respondent had an opportunity to cure it. *See, e.g., Flame & Wax, Inc. v. Laguna Candles, LLC*, Can. No. 92072343, 2022 TTAB LEXIS 272, at *13-14 (TTAB 2022) (citations omitted); *see also* TBMP § 707.02(b) ("Ordinarily, a procedural objection to a notice of reliance should be raised promptly, preferably by motion to strike if the defect is one that can be cured.").

us but in fact were manufactured and sold by Respondent. Our research has shown that because replacement filters are generally a low interest or low engagement category, some customers appear to be doing quick searches on the Amazon.com website and buying cheaper filters from Respondent while mistakenly thinking that they are genuine ZEROWATER® products.

13. Attached as Exhibit 4 is an email and related documentation that serves as one example of this actual consumer confusion between our ZEROWATER®-branded products and Respondent's ZEROLIQUID-branded products. In this email dated July 9, 2023, this customer states: "I purchased a new zero water pitcher and two pack of zero water filters on March 24, 2023 from Amazon (Invoice attached). The pitcher came with one and worked fine. Today I replaced the filter with one of the two new ones that were in the unopened bag they came in. I ran several pitchers of water through and every time the ppms came back higher than the last pitcher. I then took the last new filter from the package and it worked fine . . . . I am writing to ask if you would send a new one to replace the other one that was not filtering properly." Our investigation revealed that the replacement "two pack of zero water filters" that the customer purchased actually was made and sold by Respondent under its ZEROLIQUID mark, though the customer believed that it came from us.[7]

Following are pertinent excerpts of Exhibit 4:

[7] 10 TTABVUE 5-6, 60-64. Siegle Dec. ¶¶ 12-13 and Ex. 4.

**From:** Josh Eskins <jeskins@dakotaperformance.com>
**Sent:** Tuesday, September 26, 2023 3:36 PM
**To:** Brittany M. Siegle
**Subject:** FW: Fwd:New Filter
**Attachments:** IMG-3583.jpg; IMG-3584.jpg; Amazon.com - Order 112-4256508-4922610.pdf

**CAUTION - EMAIL FROM EXTERNAL SENDER** - Please pay special attention to links and attachments

Here is another ZeroLiquid order, mistaken for ZeroWater filters, complete with an invoice and ZeroLiquid packaging.

Thank you,

Josh

——Original Message——
From: "ZeroWater Customer Service" <customerservice@zerowater.com>
Sent: Tuesday, September 26, 2023 2:28pm
To: jeskins@dakotaperformance.com
Subject: Fwd:New Filter

Thank you,

Josh
Sr. Customer Service Manager I
ZeroWater
customerservice@zerowater.com
Hours 8 AM to 8 PM CST - Monday through Friday
800-503-2939 Press Option #1 for Sales Option #2 for Customer Service
============ Forwarded Message ============
From: [redacted]>
To: <customerservice@zerowater.com>
Date: Sun, 09 Jul 2023 22:24:45 -0600
Subject: New Filter
============ Forwarded Message ============

**Hello,**
**I purchased a new zero water pitcher and a two pack of zero water filters on March 24, 2023 from Amazon (Invoice attached). The pitcher came with one and worked fine. Today I replaced the filter with one of the two new ones that were in the unopened bag they came in. I ran several pitchers of water through and every time the ppms came back higher than the last pitcher. I then took the last new filter from the package and it worked fine and came back with 0.00.**
**I don't know if one of the new ones was bad or expired (if that is even a thing) but I am writing to ask if you would send a new one to replace the other one that was not filtering properly.**
**Thank you very much,**
[redacted]


X0038F1OJ1
111423654
Zeroliquid ZR – 001 Replacement Water Filter, Replacement Water Filters for Pitchers and Dispensers, Most Advanced 6 – Stage 0 TDS System (2 Pack)
NewItem

amazon.com

## Final Details for Order #112-4256508-4922610

Print this page for your records.

**Order Placed:** March 17, 2023
**Amazon.com order number:** 112-4256508-4922610
**Order Total:** **$28.79**

### Shipped on March 24, 2023

| **Items Ordered** | **Price** |
|---|---|
| 1 of: *Zeroliquid ZR-001 Replacement Water Filter, Replacement Water Filters for Pitchers and Dispensers, Most Advanced 6-Stage 0 TDS System (2 Pack)*<br>Sold by FunitricUUU (seller profile)<br>Supplied by Other<br>Condition New | $28.79 |

**Shipping Address:**
[redacted]
United State

**Shipping Speed:**
Two-Day Shipping

### Payment information

**Payment Method:**
Amazon.com Store Card | Last digits: [redacted]

**Billing address**
[redacted]
United States

Item( ) Subtotal: $28.79
Shipping & Handling: $0.00
-----
Total before tax: $28.79
E timated ta to be collected: $0.00
-----
**Grand Total:$28.79**

**Credit Card transactions** AmazonPLCC ending in [redacted]: March 24, 2023:$28.79

To view the status of your order, return to Order Summary.

Conditions of Use | Privacy Notice © 1996 2023, Amazon com, Inc or its affiliates

Respondent objects to Exhibit 4 as "hearsay and double hearsay" under Federal Rule of Evidence (FRE) 801 and 802 and lacking authentication under FRE 901, with the timing of the purchase, just one week before the petition to cancel was filed, raising "serious questions about its authenticity and reliability."[8] Petitioner disagrees, arguing that "[e]ven if considered hearsay, the customer's email qualifies for an exception as a record of Petitioner's routine business activity. *See* Fed. R. Evid. 803(6)(B). Handling customer inquiries is a regular practice for Petitioner."[9]

As an initial matter, to the extent Respondent's objections are based on the failure to authenticate Exhibit 4 or lay a proper foundation for its admissibility, they are curable procedural objections that Respondent waived by not raising them in a timely manner after receiving Ms. Siegle's Declaration. Respondent did not cross-examine Ms. Siegle, lodge an objection, or move to strike, but only objected in its trial brief, which is not timely under Board precedent. *See Moke Am. LLC v. Moke USA, LLC*, Opp. No. 91233014, 2020 TTAB LEXIS 18, at *19 (TTAB 2020) (applicant waived objection to admissibility of sales records under business records exception to hearsay rule where it failed to object promptly after opposer introduced the evidence through testimonial declaration and that was only basis for hearsay objection); *Sabhnani v. Mirage Brands, LLC*, Can. No. 92068086, 2021 TTAB LEXIS 464, at *16 (TTAB 2021) (overruling objection based on lack of foundation where respondent did not timely move to strike pertinent portion of declaration following receipt); *Hornby v. TJX Cos.*,

---

[8] 25 TTABVUE 9-11.

[9] 26 TTABVUE 6.

Can. No. 92044369, 2008 TTAB LEXIS 19, at *13-14 (TTAB 2008) (overruling objection to exhibits based on grounds including failure to authenticate where objection was not timely raised).

To the extent Respondent contends that Petitioner "manufactured" the alleged instance of actual confusion involved in Exhibit 4, this argument is not well-taken. The testimony of Ms. Siegle and the customer email itself support a finding that the document is what Petitioner claims it is. *See* Fed. R. Evid. 901(b)(1), (4) (documents can be authenticated by, inter alia, the testimony of a witness with knowledge stating that an item is what it is claimed to be, or when "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" shows the same). Ms. Siegle testified that she has been employed by Petitioner since 2020, becoming Senior Product Marketing Manager in April 2022, a role that entails "a particular appreciation for the value and the importance of protecting Petitioner's trademarks, in particular our ZEROWATER® trademark."[10] According to Ms. Siegle, Petitioner "became aware of Respondent's use of its ZEROLIQUID mark in approximately October 2022, when [it] discovered that Respondent was using this mark on the Amazon.com website to sell products that, among other things, competed with [Petitioner's] ZEROWATER®-branded products and which Respondent advertised as being replacements for [Petitioner's] ZEROWATER®-branded products."[11] Ms. Siegle stated that Petitioner

---

[10] 10 TTABVUE 2, Siegle Dec. ¶¶ 2, 3.

[11] *Id.* at 4, Siegle Dec. ¶ 10.

has "found that Respondent's ZEROLIQUID Mark has caused confusion in the marketplace" for reasons stated in her declaration[12] and continued with the testimony set forth above, attaching Exhibit 4 "as one example of this actual consumer confusion…."[13]

Exhibit 4 contains an email addressed to "customerservice@zerowater.com" dated July 9, 2023, which is consistent with the statement in the email that the customer purchased the pitcher on March 24, 2023 and replaced the filter on the day of the email.[14] The redaction of the sender's name—transparently shown on the face of the email—is clearly intended to protect identifying information and does not detract from the document's overall reliability. And Respondent's Marketing Director Huier Huang confirmed that the purchase referenced in the customer email was an actual purchase of its Zeroliquid filters, testifying that she "located this order and found no complaint or feedback from this customer at all."[15]

---

[12] *Id.* at 4-5, Siegle Dec. ¶ 11.

[13] *Id.* at 5-6, Siegle Dec. ¶¶ 12-13.

[14] *Id.* at 61. The first page of Exhibit 4 contains two other emails reflecting that the customer email was forwarded from Josh, Sr. Customer Service Manager I at ZeroWater, to "jeskins@dakotaperformance.com" on September 26, 2023 before being forwarded to Ms. Siegle that same day with a note stating: "Here is another ZeroLiquid order, mistaken for ZeroWater filters, complete with an invoice and ZeroLiquid packaging. Thank you, Josh." *Id.* Neither party's brief discusses the admissibility of these two forwarding emails. As noted above, any procedural objection to the authentication or business records foundation for these emails has been waived. We need not decide whether the content of the forwarding emails is hearsay because Petitioner does not rely on these forwarding emails in its substantive arguments, and we do not consider them for the truth of any statements asserted therein.

[15] 18 TTABVUE 7-8, Huang Dec. ¶ 12.

Particularly in view of the foregoing, Respondent's claim that "this may have been a manufactured instance of alleged confusion"[16] because the customer appears to have deviated from the "normal procedure" of leaving feedback or contacting the seller through Amazon.com[17] is mere speculation, not evidence, in support of this claim. "Accusations that Petitioner fabricated evidence or submitted untruthful testimony is a serious charge," *Optimal Chem. Inc. v. Srills LLC*, Can. No. 92063200, 2019 TTAB LEXIS 302, at *55-56 (TTAB 2019), and should not be made lightly.

As for Respondent's hearsay objection to the statements made by the customer in the email, those statements are either not offered for their truth, and thus are not hearsay, or fall within the state of mind exception to the hearsay rule under Fed. R. Evid. 803(3). *See Sabhnani*, 2021 TTAB LEXIS 464, at *15-16 (overruling hearsay objection to alleged misdirected phone calls) (citing *Edom Labs. Inc. v. Lichter*, Opp. No. 91193427, 2012 TTAB LEXIS 81, at *21 (TTAB 2012)); *Nat'l Rural Elec. Coop. Ass'n v. Suzlon Wind Energy Corp.*, Can. No. 92043377, 2006 TTAB LEXIS 134, at *17 n.4 (TTAB 2006) ("[L]etters (or their electronic equivalent, email) from customers are also recognized as an exception to the hearsay rule.") (citations omitted), *aff'd*

---

[16] 25 TTABVUE 12-13.

[17] 18 TTABVUE 7-8, Huang Dec. ¶¶ 11-12 (Respondent's marketing director found Siegle Declaration Exhibit 4 "serious [sic] questionable" and, after researching the order and finding no complaint or feedback from this customer, theorized "that Petitioner had created such order just to present so-called confusion proof.").

Although, as discussed *infra*, we do not consider the attachments to the customer email for the truth of the statements asserted in them, we note that Respondent provides no explanation as to how Petitioner could have come into possession of a document purporting to be the Amazon receipt for this order unless it was sent to Petitioner by the customer.

*mem.*, 214 F. App'x 987 (Fed. Cir. 2007). The hearsay objection to the statements made in the customer email is overruled.

The attachments to the customer email, including the label and Amazon.com receipt, are offered for the truth of the matter asserted therein, that is, to show that the customer actually purchased and received ZEROLIQUID-branded replacement water filters. Petitioner does not argue that Respondent waived its hearsay objection to the attachments to the customer email or explain why they do not constitute hearsay. Accordingly, we sustain Respondent's objection to the attachments to the customer email in Siegle Declaration Exhibit 4 and give them no consideration.

Respondent also objects that "Petitioner's unsupported references to 'numerous complaints' allegedly received from consumers lack evidentiary foundation and constitute attorney argument rather than admissible proof."[18] This objection is overruled because the Board is capable of assessing the proper evidentiary weight to be accorded the evidence, taking into account any imperfections surrounding its admissibility. *Peterson v. Awshucks SC, LLC*, Can. No. 92066957, LLC, 2020 TTAB LEXIS 520, at *11-12 (TTAB 2020).

---

[18] 25 TTABVUE 9. This section of Respondent's brief addresses "Petitioner's reliance on ¶ 17 and Exhibit 4" of the Siegle Declaration, *id.* at 8-9, but paragraph 17 does not mention the alleged "numerous complaints," which are discussed in paragraph 12. *See* 10 TTABVUE 5, Siegle Dec. ¶ 12. Instead, paragraph 17 reads: "The consumer confusion resulting from Respondent's use of its ZEROLIQUID mark, in particular on products of inferior quality, has harmed our relationships with our customers and has damaged the goodwill and reputation associated with our ZEROWATER® mark that we have spent more than two decades investing in." *Id.* at 6.

We construe Respondent's objection as referring to paragraph 12 of the Siegle Declaration, but to the extent Respondent also objects to paragraph 17 as being unsupported, we overrule the objection, bearing in mind any limitations or imperfections in its probative value.

## II. Record

The record includes the pleadings, the file of Respondent's registration by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), and Petitioner's pleaded registration by virtue of Trademark Rule 2.122(d)(1), 37 C.F.R. § 2.122(d)(1). The record also includes the following materials submitted by the parties during their testimony periods.

### A. Petitioner's Submissions

- Declaration of Brittany M. Siegle, Senior Product Marketing Manager of Petitioner, and Exhibits 1-4 thereto consisting of advertisements, printouts from Amazon.com, and the customer email discussed above, but not the attachments to the customer email. (10 TTABVUE.)
- Declaration of Doug Kellam, Chief Executive Officer of Petitioner, and Exhibits 1-6 thereto consisting of articles and printouts from the USPTO's database relating to Petitioner's ZEROWATER Registration No. 2802616.[19] (12 TTABVUE; Confidential Declaration at 11 TTABVUE.)

---

[19] Although a status and title copy of the pleaded registration was attached to the Petition, the Kellam Declaration included an updated status and title copy showing that the most recent renewal filing was accepted in April 2024. 12 TTABVUE 27-33.

Petitioner designated portions of its brief and the Kellam Declaration as confidential under the Board's Standard Protective Order, filing the unredacted versions under seal. Except as otherwise indicated, all TTABVUE citations in this opinion are to the redacted publicly accessible versions. We have discussed the evidence designated as confidential in general terms to the extent possible. *Noble House Home Furnishings, LLC v. Floorco Enters., LLC*, Can. No. 92057394, 2016 TTAB LEXIS 100, at *11 n.21 (TTAB 2016) (explaining the Board's need "to discuss the evidence of record, unless there is an overriding need for confidentiality, so that the parties and a reviewing court will know the basis of [our] decision[ ] ….").

- Petitioner's Notice of Reliance and Exhibits A-C thereto, consisting of Respondent's answers to certain requests for admission and interrogatories and printed pages from www.dictionary.com showing definitions of "water" and "liquid." (13 TTABVUE.)

### B. Respondent's Submissions

- Declaration of Xiang Zhou, General Manager of Respondent, with Exhibit A, a copy of Respondent's registration. (17 TTABVUE.)
- Declaration of Huier Huang, Marketing Director of Respondent. (18 TTABVUE.)
- First Notice of Reliance on printed publications and Exhibits A-1 to A-22. (14 TTABVUE.)
- Second Notice of Reliance on printed publications from third party websites describing the meaning of "water" and "liquid" and Exhibits B-1 to B-4. (15 TTABVUE.)
- Third Notice of Reliance on printed publication and Exhibit C-1 from Amazon.com entitled "Intellectual Property Policy for Sellers – FAQ about Trademarks." (16 TTABVUE.)

## III. Background of the Parties

According to Petitioner's CEO Doug Kellam, "Petitioner is a water filtration company that makes and sells water filtration products for household use throughout

the United States and internationally."[20] Kellam testified that Petitioner has used the ZEROWATER mark in interstate commerce in connection with the marketing and sale of its water filtration products since at least as early as 2003, and has marketed and sold a variety of water filtration products under that mark.[21] Petitioner currently markets and sells ZEROWATER-branded products including filtered water pitchers and dispensers, faucet mount filtration systems, and replacement filters on its zerowater.com website and on amazon.com.[22] It also sells ZEROWATER-branded products "throughout the United States in nationwide retailers including but not limited to Ace Hardware, Bed Bath & Beyond, Best Buy, Home Depot, Lowes, Meijer, Target, Walmart, and Wegman's."[23]

Respondent "has been selling water filter pitchers and water filter replacements online since 2022."[24] Its "Zeroliquid water filter replacements are compatible with Zeroliquid['s] own brand water pitchers as well as ZEROWATER pitchers" and dispensers.[25] At times, Respondent has mentioned the ZEROWATER brand in its marketing of ZEROLIQUID filters in a manner that Respondent asserts is consistent with Amazon's policy and guidelines regarding compatible products.[26] After being approached by Petitioner, Respondent removed the words "ZEROWATER" and

---

[20] 12 TTABVUE 2, Kellam Dec. ¶ 3.

[21] *Id.* at 2-3, Kellam Dec. ¶¶ 5-6.

[22] *Id.* at 3, Kellam Dec. ¶¶ 6-7.

[23] *Id.* at 3, Kellam Dec. ¶ 8.

[24] 18 TTABVUE 2, Huang Dec. ¶ 3.

[25] *Id.* at 2, 5, Huang Dec. ¶¶ 4, 8.

[26] *Id.* at 5-6, Huang Dec. ¶ 8.

"ZERO WATER" from its ZEROLIQUID Amazon.com listings and started including the following statement "#PLEASE NOTE: Zeroliquid filters are NOT original filters. Zeroliquid an independent manufacturer/Brand to design and produce water filters.#"[27]

## IV. Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action is a requirement that must be proven by the plaintiff in every inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020). To do so, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute and (ii) a reasonable belief in damage proximately caused by registration of the mark. *Id.* at 1303, 1306 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-33 (2014)). "Under § 14 of the Lanham Act, a cancellation challenge may be filed 'by any person who believes that he is or will be damaged ... by the registration of a mark.'" *Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1072 (Fed. Cir. 2022) (citing 15 U.S.C. § 1064). "The statutory requirements to cancel registration of a mark under § 1064 are substantively equivalent to those required to oppose registration under § 1063." *Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*, 102 F.4th 1314, 1321 n.1 (Fed. Cir. 2024) (quoting *Corcamore*, 978 F.3d at 1306 n.2).

As noted above, the record includes a status and title copy of Petitioner's pleaded registration,[28] which supports a plausible likelihood of confusion claim and

[27] *Id.* at 6, Huang Dec. ¶ 9.

[28] 1 TTABVUE 8-9; 12 TTABVUE 27-33.

establishes Petitioner's entitlement to a statutory cause of action to seek cancellation of Respondent's registration. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (pleaded registrations "suffice to establish ... direct commercial interest"; a belief in likely damage can be shown by establishing a direct commercial interest); *see also Look Cycle Int'l v. Kunshan Qiyue Outdoor Sports Goods Co., Ltd.*, Can. No. 92079409, 2024 TTAB LEXIS 289, at *7-8 (TTAB 2024).

## V. Petitioner's Section 2(d) Claim

Section 2(d) of the Trademark Act prohibits the registration of a mark that "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the [registrant], to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). To prevail on its Section 2(d) claim, Petitioner must prove, by a preponderance of the evidence, that it has priority in its ZEROWATER mark, and that Respondent's use of its ZEROLIQUID mark in connection with the goods identified in its registration is likely to cause confusion, mistake, or deception as to the source or sponsorship of those goods. *See, e.g., Cunningham*, 222 F.3d at 946.

To determine whether there is a likelihood of confusion under Section 2(d), we consider the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) (the "*DuPont* factors"), cited in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015). We consider all *DuPont* factors for which there

is argument and evidence of record. *Bureau Nat'l Interprofessionnel du Cognac v. Cologne & Cognac Ent.*, 110 F.4th 1356, 1369 (Fed. Cir. 2024).

In any likelihood of confusion analysis, different *DuPont* factors may play a dominant role and some factors may not be relevant. *Naterra Int'l, Inc. v. Bensalem*, 92 F.4th 1113, 1116 (Fed. Cir. 2024) (quoting *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 1362 (Fed. Cir. 2022)). Varying weight may be assigned to each *DuPont* factor depending on the evidence presented. *Id*. In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods or services. *Herbko Int'l, Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1164 (Fed. Cir. 2002); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks.").

**A. Priority**

"In a cancellation proceeding such as this one where both parties own registrations, priority is in issue." *Double Coin Holdings Ltd. v. Tru Dev.*, Can. No. 92063808, 2019 TTAB LEXIS 347, at *14 (TTAB 2019) (quoting *Coach/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, Can. No. 92051006, 2014 TTAB LEXIS 95, at *48 (TTAB 2014)). A party may rely upon the filing date of the application underlying its registration as its constructive use date for purposes of priority. 15 U.S.C. § 1057(c); *see, e.g., Brewski Beer Co. v. Brewski Bros., Inc.*, Can. No. 92021735, 1998 TTAB LEXIS 116, at *10 (TTAB 1998) ("Of course, petitioner or respondent may rely on its

registration for the limited purpose of proving that its mark was in use as of the application filing date."). The filing date of the application underlying Petitioner's pleaded registration, February 25, 1999, precedes both the September 9, 2021 filing date of the application underlying Respondent's registration and Respondent's asserted first use dates of June 11, 2021.[29] Respondent has neither alleged nor proven an earlier priority date. Accordingly, Petitioner has established its priority in the ZEROWATER mark for the goods identified in its pleaded registration.

### B. Similarity or Dissimilarity of the Goods, Trade Channels and Classes of Consumers and Buyer Sophistication

We begin with the second *DuPont* factor, which concerns the similarity or dissimilarity and nature of the goods or services as described in an application or registration, and the third *DuPont* factor, which concerns the similarity or dissimilarity of established, likely to continue trade channels. *DuPont*, 476 F.2d at 1361. We also consider the classes of consumers and their sophistication under the fourth *DuPont* factor. *Id.*

As for the goods, Respondent's "water treatment equipment, namely, water filtration units" are legally equivalent to "water filtering units" and broad enough to encompass Petitioner's "water filtering units for household use." *See In re Hughes Furniture Indus., Inc.*, Serial No. 85627379, 2015 TTAB LEXIS 65, at *10 (TTAB 2015) ("Applicant's broadly worded identification of 'furniture' necessarily encompasses Registrant's narrowly identified 'residential and commercial

[29] 1 TTABVUE 8; 17 TTABVUE 11, Zhou Dec. Ex. A.

furniture.'"); *see also San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*, 565 F.2d 683, 684 (CCPA 1977) ("capacitors" considered to be identical to "electrical capacitors"). Thus, the goods are in-part legally identical and to this extent are presumed to travel in the same channels of trade and to be offered to the same classes of consumers. *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1372 (Fed. Cir. 2018) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) ("[I]t is well established that, absent restrictions in the application and registration, [identical] goods and services are presumed to travel in the same channels of trade to the same class of purchasers.") (internal quotation marks omitted)); *Int'l Paper Co. v. Valley Paper Co.*, 468 F.2d 937, 938 (CCPA 1972) (where "registration description is broad enough to cover the goods [of the applicant] ... the legal effect of this fact is that the goods and channels of trade are to be considered the same for the purposes of this opposition"). Moreover, there is evidence that the involved goods of both Petitioner and Respondent are sold on Amazon.com,[30] supporting a finding that the goods are sold in this overlapping trade channel.

The second and third *DuPont* factors weigh heavily in favor of a likelihood of confusion.

Respondent's arguments also implicate buyer sophistication under the fourth *DuPont* factor. *DuPont*, 476 F.2d at 1361 (considering "conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing").

---

[30] *See* 12 TTABVUE 3, Kellam Dec. ¶ 7; 1 TTABVUE 5, ¶ 23, 4 TTABVUE 4, ¶ 23 (admitting allegation that "Respondent sells its ZeroLiquid-branded goods on Amazon.com").

"Purchaser sophistication may tend to minimize likelihood of confusion. Conversely, impulse purchases of inexpensive items may tend to have the opposite effect." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1376 (Fed. Cir. 2005) (citation omitted). Respondent argues, without citing any evidence, that because "water filtration systems and replacement filters are essential to drinking water safety, consumers carefully compare brands and specifications before making a purchase."[31] We are not persuaded that consumers of water filtration products exercise such heightened care or are particularly sophisticated. The evidence of record shows that such goods are sold to members of the general public through channels including mass retail chains, websites and Amazon.com.[32] Both parties promote their products as removing contaminants from water, but the advertisements themselves do not appear to speak directly to safety.[33] And the evidence shows that the goods are relatively low priced, ranging from $20.99 for a single replacement filter to $127.89 for a pack of twelve replacement filters.[34] Although consumers may exercise some care in purchasing the goods, "even consumers who exercise a higher degree of care are not necessarily knowledgeable

---

[31] 25 TTABVUE 30.

[32] *See, e.g.*, 10 TTABVUE 3-4, Siegle Dec. ¶¶ 7, 9; 4 TTABVUE 4, ¶ 23; 18 TTABVUE 2, 4, Huang Dec. ¶¶ 3, 7.

[33] 10 TTABVUE 25 (stating that Petitioner's filters remove 99.6% of total dissolved solids and are certified to reduce lead, chromium, and PFOA/PFOS), 30 ("TDS can contribute to a difference in taste and appearance of water."). The only reference to health or safety that we find in the advertisements was a Facebook post by Petitioner mentioning a study showing a link between hard water and urinary tract infections in pets. *Id.* at 41.

[34] 18 TTABVUE 5 (Respondent's products as sold on Amazon.com); *see* 10 TTABVUE 10 (Petitioner offering a 2-pack of filters for $29.99); 13-23 (offering pitchers of different sizes priced from $29.99 to $74.99).

regarding the trademarks at issue, and therefore immune from source confusion." *Made in Nature, LLC v. Pharmavite LLC*, Opp. No. 91223352, 2022 TTAB LEXIS 228, at *70 (TTAB 2021) (citation and internal quotation marks omitted). As a result, we find the fourth *DuPont* factor to be neutral.

### C. Strength of Petitioner's Mark

Before we compare the marks, we consider the strength of Petitioner's mark as this may affect the scope of protection to which the mark is entitled. *DuPont*, 476 F.2d at 1361. "Two of the *DuPont* factors (the fifth and sixth) consider strength." *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023). We address these factors in turn.

#### 1. Asserted Commercial Strength or "Fame" of Petitioner's Mark

The fifth *DuPont* factor enables Petitioner to show that its pleaded mark is entitled to an expanded scope of protection by adducing evidence of "[t]he fame of the prior mark (sales, advertising, length of use)." *DuPont*, 476 F.2d at 1361. Fame for purposes of likelihood of confusion "varies along a spectrum from very strong to very weak," *Palm Bay*, 396 F.3d at 1374-75, and exists if "a significant portion of the relevant consuming public ... recognizes the mark as a source indicator." *Joseph Phelps Vineyards, LLC v. Fairmont Holdings, LLC*, 857 F.3d 1323, 1324-25 (Fed. Cir. 2017) (citations omitted). It "may be measured indirectly, among other things, by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident." *Omaha Steaks Int'l v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1319 (Fed. Cir.

2018) (quoting *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1371 (Fed. Cir. 2002)). Other indicia of commercial strength include “widespread critical assessments; notice by independent sources of the products identified by the marks; and the general reputation of the products and services.” *Monster Energy Co. v. Lo*, Opp. No. 91225050, 2023 TTAB LEXIS 14, at *30 (citations omitted) (TTAB 2023). “The party asserting that its mark is famous has the burden to prove it.” *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1367 (Fed. Cir. 2012) (citation omitted).

Petitioner argues that its ZEROWATER mark “is very well known as a result of Petitioner’s mass retail activities, public exposure, and sales success over the past two decades.”[35] In support, Petitioner points to its sale of ZEROWATER-branded water filtration products throughout the United States (and internationally) since at least as early as 2003, both online and via major retail stores throughout the United States, including Ace Hardware, Bed Bath & Beyond, Walmart, Target, Lowes, Home Depot and Wegmans.[36] Petitioner also submitted confidential marketing and advertising and sales figures for the period 2019 to April 2024, but does not specify what portion pertains to the United States market, which is our only focus here.[37] Because Petitioner states that it sells throughout the United States and internationally, we have no way of knowing what portion of its marketing and

---

[35] 24 TTABVUE 9-10 (citing 11 TTABVUE, Kellam Dec.).

[36] *Id.* at 18 (citing 10 TTABVUE, Siegle Dec.; 11 TTABVUE, Kellam Dec.).

[37] 11 TTABVUE 3, Kellam Dec. ¶ 10.

advertising expenditures or sales is attributable to the United States as opposed to other countries. *See TiVo Brands LLC v. Tivoli, LLC*, Opp. 91221632, 2018 TTAB LEXIS 439, at *45 n.72 (TTAB 2018) ("The probative value of these figures is reduced because they include foreign revenue ….").

Petitioner also points to two specific examples of media attention: its ZEROWATER-branded product's inclusion in Reviewed.com's list of "The Best Water Filter Pitchers of 2023" (seen on www.usatoday.com)[38] and in CNET's article entitled "Our Favorite Water Filter Pitcher is 40% Off for Black Friday."[39] These publications provide some evidence of positive critical assessment and general reputation of goods bearing Petitioner's mark, but the probative value again is limited. Petitioner did not present any evidence of the circulation of these publications. *See Safer, Inc. v. Oms Invs.*, Opp. No. 91176445, 2010 TTAB LEXIS 51, at *37 (TTAB 2010) ("We cannot infer that the mark is famous or enjoys public renown because there is no evidence regarding the circulation of these ... articles.").

Based on the record before us, Petitioner has not shown that its ZEROWATER mark has achieved significant recognition among relevant consumers to warrant the greater protection accorded to commercially strong marks. *See, e.g.*, *Heil Co. v. Tripleye GmbH*, Opp. 91277359, 2024 TTAB LEXIS 494, at *56 (TTAB 2024) (although used for 20 years, record did not support placing mark on high end of

---

[38] 12 TTABVUE 3, 7-13, Kellam Dec. ¶ 11, Ex. 1 (discussing ZeroWater 10-Cup Water Filter Pitcher).

[39] *Id.* at 20-22, Kellam Dec. Ex. 2 (discussing ZeroWater water filtration starter kits and pitchers).

fame/commercial strength spectrum where there was evidence of only three instances of unsolicited media recognition and no context for advertising and revenue figures).

**2. Asserted Weakness of Petitioner's Mark**

The sixth *DuPont* factor, "[t]he number and nature of similar marks in use on similar goods," 476 F.3d at 1361, "is a measure of the extent to which other marks weaken the assessed mark." *Spireon*, 71 F.4th at 1362. "There are two prongs of analysis for a mark's strength under the sixth factor: conceptual strength and commercial strength. Conceptual strength is a measure of a mark's distinctiveness [which] is often classified in categories of generally increasing distinctiveness: … (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* (citing, inter alia, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (internal citations and quotation marks omitted)).

Respondent submitted evidence of twenty-two third-party registrations to show that the word ZERO is commonly used and thus is "a weak term in the industry."[40]

---

[40] 25 TTABVUE 28. Respondent appears to argue that this evidence shows both commercial and conceptual weakness under the sixth *DuPont* factor, at times conflating the two principles. *See, e.g.*, *id.* at 27-29. In doing so, Respondent contends that these registered marks are presumed to be in use, with Petitioner bearing the burden to prove non-use. *Id.* at 28. The authorities cited by Respondent, Trademark Act Section 7(b), 15 U.S.C. § 1057(b), *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 (Fed. Cir. 2015), and *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1341 (Fed. Cir. 2015), do not support this proposition. To the extent Respondent's argument invokes the Federal Circuit's decision in *Spireon*, that case presented "the far narrower question of whether the burden of showing non-use of identical marks for identical goods rests with the opposer." 71 F.4th at 1365. There are no such marks in the record here.

Respondent has not submitted any evidence of third-party use, including use of the registered marks. Thus, we consider Respondent's evidence of third-party registrations in relation to the conceptual strength of ZEROWATER.

"Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." *Juice Generation*, 794 F.3d at 1339 (quoting 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:90 (4th ed. 2015) ("McCarthy") (internal quotation marks omitted)); *accord Spireon*, 71 F.4th at 1363; *Jack Wolfskin*, 797 F.3d at 1374. "Marks that are descriptive or highly suggestive are entitled to a narrower scope of protection, i.e., are less likely to generate confusion over source identification, than their more fanciful counterparts." *Juice Generation*, 794 F.3d at 1339.

Moreover:

> Evidence of composite third-party registrations is also relevant because ... [s]uch registrations could ... show that the [US]PTO, by registering several marks with such a common segment, recognizes that portions of such composite marks other than the common segment are sufficient to distinguish the marks as a whole and to make confusion unlikely. That is, the presence of such a descriptive or suggestive weak segment in conflicting composite marks is not per se sufficient to make confusion likely.

*Spireon*, 71 F.4th at 1364 (citing 2 McCarthy § 11:90 (5th ed. 2023)).

The third-party registrations made of record by Respondent include:[41]

---

[41] Respondent made of record six additional third-party registrations that issued based on Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a), for which there is no evidence that an affidavit of use has been filed under Trademark Act Section 71, 15 U.S.C. § 1141k. *See* 14 TTABVUE 35 (ZEROHERO), 45 (FATSTRIPPAZERO), 63 (ZEROGE), 92 (URBANZERO), 114 (ZEROTH) and 120-24 (CLEAN ZERO). We have not given any consideration to these registrations. *In re Info. Builders*, Serial No. 87753964, 2020 TTAB LEXIS 20, at *19 n.19

| Mark | Reg. No. | Relevant Portion of Identification |
|---|---|---|
| **ZEROMIX** | 6416392 | "water filtering apparatus"[42] |
| **ZERO MASS** | 5891710 | "apparatus for filtering drinking water"[43] |
| **DR.ZERO** | 6352298 | "water purification installations"[44] |
| **ZERONE** | 5594095 | "water filtering apparatus"[45] |
| **FRESHLIFE ZERO TDS** | 5811535 | "water filtering apparatus"[46] |
| **AQUAZERO** | 1918780 | "water purification units for industrial use"[47] |
| **GETZERO** | 7025022 | "water purifying apparatus for household purposes"[48] |
| **GOZERO** | 6673166 | "water purifying apparatus for household purposes"[49] |
| **H2ZERO and design** | 6420989 | "water filtration systems comprised of water filtering apparatus and water filters"[50] |
| **DAYZERO** | 6729321 | "apparatus for filtering drinking water"[51] |
| **ZEROWASTE** | 3151187 | "water filtration units and water purification units"[52] |
| **ZERO BIG** | 6283925 | "water filtering apparatus"[53] |

(TTAB 2020) ("[W]e have not given any consideration to this registration [issued under Section 66(a)] because it does not demonstrate exposure of the mark prior to registration through use in commerce and, therefore, has no probative value.") (citations omitted).

In addition, the registration for IF IT'S NOT ALL ZEROS – IT'S NOT ZEROWATER, 14 TTABVUE 82-84, is owned by Petitioner and thus we do not consider it among the third-party registrations.

42 14 TTABVUE 13.

43 *Id.* at 20.

44 *Id.* at 25.

45 *Id.* at 30-32.

46 *Id.* at 42.

47 *Id.* at 52.

48 *Id.* at 56.

49 *Id.* at 60.

50 *Id.* at 70.

51 *Id.* at 75.

52 *Id.* at 80.

53 *Id.* at 88.

| | | |
|---|---|---|
| **ZERO-TO-WASTE and ZERO2WASTE** | 5661821, 5661818 | "water filtration control system comprised of water filter controllers, computer software, and control equipment in the nature of pipe, valves, fittings, control valves, limit switches, solenoid valves, and actuators, all of the foregoing for use in operating, controlling, detecting, maintaining and measuring water quality for municipal and industrial water treatment facilities"[54] |
| **ZERO** | 4649175 | "Encapsulated, cartridge-enclosed, or multi-component-enclosed filtering and purifying units made from porous, functional polymeric and metallic membranes, non-woven media and ceramics for gas and liquid filtration and purification for use in the biotechnology, pharmaceutical, medical, chemical, petrochemical, food and beverage, power, environmental protection, semiconductor/microelectronics, aerospace, analytical and diagnostics, and wastewater treatment industries"[55] |

Petitioner argues that Respondent has submitted no evidence of third-party use of these or other marks that would weaken the commercial strength of ZEROWATER, and that the submitted third-party registrations do not narrow its scope of protection because one is owned by Petitioner, six are for industrial use, and others convey different overall commercial impressions.[56] We have considered Petitioner's arguments, some of which have merit. For example, the structure of the mark ZERONE obscures the word ZERO, lending little support to an argument that the term is conceptually weak. However, the other marks listed above, including those

[54] *Id.* at 101, 106. These registrations are owned by the same party and claim the same goods.

[55] *Id.* at 111.

[56] 24 TTABVUE 19; 26 TTABVUE 10-11.

that have certain differences from Petitioner's mark or are registered for industrial water filtration, support a finding that the word ZERO has a suggestive meaning when used in connection with water filtering goods.

This is consistent with Petitioner's use of the word ZERO in its other mark, IF IT'S NOT ALL ZEROS – IT'S NOT ZEROWATER, and statement in its brief that "the meaning of ZEROLIQUID is nearly identical to the meaning of ZEROWATER: that of products that remove contaminants from drinking water,"[57] thus leaving water that has arguably zero contaminants. Marks such as FRESHLIFE ZERO TDS, GETZERO, GOZERO and H2ZERO and design, registered for use with water filtering goods, support this connotation. There is also evidence of several third-party registered marks that, like Petitioner's mark, feature the word ZERO followed by another word and cover the same or nearly the same goods (ZEROMIX, ZERO MASS, ZEROWASTE and ZERO BIG), although none of these marks is as close to ZEROWATER or ZEROLIQUID as those marks are to each other. *See Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 675 (Fed. Cir. 1984) (noting that the third-party marks were more different from the marks of applicant and registrant than those marks were from each other).

In addition, Petitioner's registration includes a disclaimer of the word "WATER," which "tacitly admits that the word is not inherently distinctive." *Sock It To Me, Inc. v. Fan*, Opp. No. 91230554, 2020 TTAB LEXIS 201, at *31 (TTAB 2020) (citation omitted).

---

[57] 24 TTABVUE 16.

### 3. Conclusion on Strength

Petitioner has not shown that its ZEROWATER mark is commercially strong or "famous" for likelihood of confusion purposes. Although ZEROWATER is registered on the Principal Register without a claim of acquired distinctiveness, and carries a presumption under Trademark Act Section 7(b), 15 U.S.C. § 1057(b), that it is inherently distinctive, the nature of the mark itself and the third-party registrations lead us to conclude that the mark as a whole is highly suggestive of Petitioner's "water filtering units for household use" and is conceptually weak.[58] Petitioner's pleaded ZEROWATER mark is thus entitled to a relatively narrow scope of protection, but it is nevertheless settled "that likelihood of confusion, mistake or deception is to be avoided as much between weak marks as between strong marks." *In re Colonial Stores, Inc.*, Serial No. 73209079, 1982 TTAB LEXIS 116, at *7-8 (TTAB 1982) (citing *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401 (CCPA 1974) ("Confusion is confusion. The likelihood thereof is to be avoided, as much

---

[58] Respondent argues that the third-party registrations also implicate the eleventh *DuPont* factor, showing "that Petitioner does not have exclusive rights to 'ZERO,' as numerous third parties have registered similar marks." 25 TTABVUE at 29. This argument misconstrues the eleventh *DuPont* factor, which considers whether **Respondent** has a right to exclude third parties from using its mark. *See DuPont*, 476 F.2d at 1361. Respondent has not provided any evidence of consumer recognition or enforcement of its ZEROLIQUID mark, so this factor is not relevant or is neutral. *KME Ger. GmbH v. Zhejiang Hailiang Co.*, Opp. No. 91267675, 2023 TTAB LEXIS 379, at *56 (TTAB 2023), *rev'd on other grounds*, 2025 U.S. Dist. LEXIS 25637 (E.D. Va. Jan. 10, 2025), appeal docketed, No. 25-1129 (4th Cir. Feb. 12, 2025).

Respondent further contends that an entity such as Petitioner "cannot monopolize descriptive language in its industry," 25 TTABVUE 29, but as noted, Petitioner's mark as a whole is presumed to be inherently distinctive. The case cited by Respondent, *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985), does not support its position but only confirms that incontestable registrations, like Petitioner's, cannot be challenged on grounds of descriptiveness. To the extent Respondent's arguments go to conceptual weakness of ZERO, we have fully considered them in connection with the sixth *DuPont* factor.

between 'weak' marks as between 'strong' marks, or as between a 'weak' and a 'strong' mark.")); *see also Made in Nature,* 2022 TTAB LEXIS 228, at *43.

**D. Similarity or Dissimilarity of the Marks**

We turn now to the first *DuPont* factor, which considers "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 476 F.2d at 1361. "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Davia*, Serial No. 85497617, 2014 TTAB LEXIS 214, at *4 (TTAB 2014) (citation omitted); *accord Krim-Ko Corp. v. The Coca-Cola Co.*, 390 F.2d 728, 732 (CCPA 1968) ("It is sufficient if the similarity in either form, spelling or sound alone is likely to cause confusion.") (citation omitted).

"The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Cai*, 901 F.3d at 1373 (quoting *Coach Servs.*, 668 F.3d at 1368, internal quotation marks omitted). "On the other hand, in articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) (quoted in *Coach Servs.*, 668 F.3d at 1368). We focus "on the recollection of the average customer, who retains a general rather than specific impression of the marks." *Inter*

*IKEA Sys. B.V. v. Akea, LLC*, Opp. No. 91196527, 2014 TTAB LEXIS 166, at *17-18 (TTAB 2014) (citations omitted).

On their face, ZEROWATER and ZEROLIQUID bear certain similarities in appearance and sound. Both marks begin with the word ZERO as the prefix. The first word of a mark is often considered dominant as it is more likely to be noticed and remembered by consumers. *See, e.g.*, *In re Detroit Athletic Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) (first word "is particularly significant because consumers typically notice those words first") (citing *Palm Bay*, 396 F.3d at 1372, and *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876 (Fed. Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word")). The entireties of the marks are of similar length, without a space between the words. Although Respondent argues that the marks have different numbers of letters and syllables, among other distinctions,[59] purchasers "do not engage in trademark syllable-counting—they are governed by general impressions made by appearance or sound, or both." *In re John Scarne Games, Inc.*, 1959 TTAB LEXIS 31, at *1 (TTAB 1959). With that said, the second words in both marks actually do have the same number of syllables, lending a similar cadence to the marks, despite the differences in the sounds of those words argued by Respondent.

As for connotation, both parties submit dictionary definitions in support of their respective arguments. Petitioner argues that the second words "WATER" and

---

[59] 25 TTABVUE 18-20.

"LIQUID" carry similar meanings because water is a type of liquid.[60] Although conceding that the words share "conceptual proximity," Respondent argues that "liquid" refers to a state of matter and is broader than water, pointing to differences in their chemical compositions and properties, which, Respondent asserts, make confusion unlikely.[61] We are not persuaded by Respondent's arguments. As evidenced by dictionary entries submitted by both parties,[62] water is a type of liquid. Consumers encountering the marks in the context of the goods—which are identified for use in filtering water—would perceive the marks as having a similar connotation, relating to the removal of contaminants from water. *See UMG Recordings, Inc. v. Mattel, Inc.*, Opp. No. 91176791, 2011 TTAB LEXIS 286, at *55 (TTAB 2011) ("[W]e must look to the likely consumer perception of the mark in connection with the identified goods, rather than applicant's intended connotation."). There is no support for the proposition that consumers would perceive Respondent's mark as referring to any type of liquid other than water.

The marks are very similar in appearance, sound, connotation and commercial impression, with the first *DuPont* factor weighing heavily in favor of likelihood of confusion.

---

[60] 24 TTABVUE 16 (citing 13 TTABVUE 14 (www.dictionary.com entry for water)).

[61] 25 TTABVUE 20-22 (citing 15 TTABVUE 1-3).

[62] 13 TTABVUE 14 (dictionary.com defines water as "a transparent, odorless, tasteless liquid…"); 15 TTABVUE 14 (merriam-webster.com defines water as "the liquid that descends from the clouds as rain, forms streams, lakes, and seas, and is a major constituent of all living matter…").

### E. Actual Confusion

Invoking the seventh *DuPont* factor, the nature and extent of any actual confusion, *DuPont*, 476 F.2d at 1361, Petitioner argues that there has been actual confusion among consumers as to the source of the parties' goods. "A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion." *In re Majestic Distilling Co.*, 315 F.3d 1311, 1317 (Fed. Cir. 2003). "However, evidence of actual confusion is notoriously difficult to come by and, in any event, such evidence is not required in order to establish likelihood of confusion." *Time Warner Entm't Co. v. Jones*, Opp. No. 91112409, 2002 TTAB LEXIS 462, at *35 (TTAB 2002).

Petitioner points to the evidence recounted in the evidentiary issues section above, stating "[t]his representative example of actual confusion reinforces the likelihood of confusion that exists in this case."[63] In addition to objecting on the grounds already discussed, Respondent offers several varied arguments in response.[64] According to Respondent, its "compatible with" advertising is lawful, complies with Amazon's policies, and explicitly disclaims affiliation with Petitioner.[65] This may be so, but it

[63] 24 TTABVUE 20.

[64] In the section entitled "Lack of Actual Confusion," Respondent's brief states that "Dasalla Trading Company objected to the admissibility of any and all evidence of actual confusion" on grounds of hearsay and/or "as not having been produced in discovery." 25 TTABVUE 22. Respondent's evidentiary objections, discussed above, do not mention failure to produce documents in discovery. This reference appears to have been carried over from the brief in a different case and we give it no consideration.

[65] 25 TTABVUE 23-25. Respondent's use of a disclaimer of affiliation may be relevant in an infringement case, like those Respondent cites in its brief, *id.* at 24-25, but it is not relevant in this cancellation proceeding. *See B&B Hardware*, 575 U.S. at 145 ("In infringement

does not detract from the plain import of a customer sending an email to Petitioner regarding dissatisfaction with Respondent's product. In the email, the customer states "I purchased a new zero water pitcher and a two pack of zero water filters on March 24, 2023 from Amazon (Invoice attached),"[66] yet it is undisputed that the water filters referenced by the customer were sourced from Respondent.[67] Although Respondent argues that this single instance is not persuasive and should be discounted as de minimis, the accompanying testimony suggests that it was not an isolated occurrence.[68] While it would have been helpful to have more examples before us, the evidence of record is at minimum "illustrative of how and why confusion is likely" in that it shows that the consumer became confused as to the source of the parties' goods based on the marks. *See Molenaar, Inc. v. Happy Toys Inc.*, Opp. No. 91054350, 1975 TTAB LEXIS 1, at *5-6 (TTAB 1975) ("The record shows at least a single instance of actual confusion, albeit there is testimony which indicates that there have been more instances of actual confusion. While a single instance is insufficient as evidence from which to conclude that applicant's mark has consistently caused confusion, the single instance of confusion is at least 'illustrative of a situation

---

litigation, the district court considers the full range of a mark's usages, not just those in the application."); *In re Aquitaine Wine USA, LLC*, Serial No. 86928469, 2018 TTAB LEXIS 108, at *11 (TTAB 2018) ("We must compare the marks as they appear in the drawings, and not on any labels that may have additional wording or information.").

[66] 10 TTABVUE 61, Siegle Dec. Ex. 4.

[67] 18 TTABVUE 7-8, Huang Dec. ¶ 12 (Respondent's marketing director testified: "I located this order and found no complaint or feedback from this customer at all.").

[68] 10 TTABVUE 4-5, Siegle Dec. ¶¶ 11-12 ("We have received numerous complaints from owners of ZEROWATER®-branded pitchers regarding the lesser quality of ZEROLIQUID-branded replacement filters that they purchased believing were manufactured and sold by us but in fact were manufactured and sold by Respondent.").

showing how and why confusion is likely'.") (quoting *Libbey-Owens-Ford Glass Co. v. Thermoproof Glass Co.*, 390 F.2d 770, 771 (CCPA 1968)). Considering the evidence of record, including the limitations noted by Respondent, we find that the seventh *DuPont* factor lends some support to a conclusion that confusion is likely.

### F. Balancing the Factors and Conclusion on Likelihood of Confusion

The final step in analyzing likelihood of confusion is to weigh the *DuPont* factors for which there has been evidence and argument and "explain the results of that weighing." *Heil Co.*, 2024 TTAB LEXIS 494, at *94 (citing *In re Charger Ventures LLC*, 64 F.4th 1375, 1384 (Fed. Cir. 2023) ("In order for this court to exercise its duty of review, and to do so meaningfully, the Board must provide a reasonable explanation for its findings, explaining the weight it assigned to the relevant factors."). The goods are legally identical, at least in part, with the second *DuPont* factor weighing heavily in favor of likelihood of confusion. The channels of trade and classes of consumers for the legally identical goods are presumed to be identical, with this *DuPont* factor also weighing heavily in favor of likelihood of confusion. Consumers may exercise some care in purchasing the goods, but the goods are relatively inexpensive and there is no evidence that consumers are particularly sophisticated, with the fourth *DuPont* factor being neutral in our analysis.

Petitioner has not shown that its pleaded ZEROWATER mark is commercially strong or famous for likelihood of confusion purposes under the fifth *DuPont* factor. Based on Respondent's third-party registration evidence and the nature of the mark itself, including the disclaimer of "WATER," we find that ZEROWATER is highly

suggestive of "water filtering units for household use" and entitled to a narrower scope of protection under the sixth *DuPont* factor. Considered in their entireties, the ZEROWATER and ZEROLIQUID marks are very similar, with the first *DuPont* factor weighing heavily in favor of likelihood of confusion. Petitioner's evidence of actual confusion, although limited, lends some support to a finding of likelihood of confusion under the seventh *DuPont* factor. No other factor weighs against likelihood of confusion.

Balancing the factors, we find that Petitioner has shown, by a preponderance of the evidence, that confusion is likely when Petitioner's and Respondent's marks are used with their respectively identified goods, notwithstanding any conceptual weakness of Petitioner's ZEROWATER mark.

**Decision**:

The petition to cancel Respondent's registration under Section 2(d) of the Trademark Act is granted.