EXHIBIT 16

# Note To The File

Date: August 6, 2025
Created by: Office of the Deputy Commissioner for Trademark Examination Policy

---

The attached Order for Sanctions was issued on August 6, 2025. A publicly available version of the Order is presently available at **https://www.uspto.gov/trademarks/protect/decisions-and-proceedings-search-tool**. The Order was placed into this record because the U.S. Trademark Serial Number was identified in Exhibit A to the Order.

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE DIRECTOR**

| | |
|---|---|
| In re: | ) |
| | ) |
| Shenzhen Seller Growth Network Tech. Co., Ltd. | ) |
| Shenzhen Qianhai Bishengdao Network Tech. Co., Ltd. | ) |
| Shenzhen Qianhai Be-Victory Network Tech. Co., Ltd. | ) |
| | ) |
| | ) |
| Respondents | ) |
| | ) |

# FINAL ORDER FOR SANCTIONS

This Final Order for Sanctions follows several Show Cause Orders issued in this administrative sanctions proceeding. In the preceding Show Cause Orders, the United States Patent and Trademark Office ("USPTO" or "Office") required Respondents,[1] and their officers, employees, and/or affiliates to show cause as to why the USPTO should not issue sanctions pursuant to 37 C.F.R. §11.18(c) based on Respondents' violation of the Rules of Practice in Trademark Cases ("USPTO Rules") and the Terms of Use for USPTO Websites, including the Trademark Verified USPTO.gov Account Agreement ("Terms of Use"). *See generally* 15 U.S.C. §§1051 *et seq.*; 37 C.F.R. Parts 2, 11; https://www.uspto.gov/terms-use-uspto-websites; https://www.uspto.gov/sites/default/files/documents/TM-verified-account-agreement.pdf. This order applies to all identified applications and registrations listed in Exhibit A.

## I. Background

### A. Procedural History

This matter has been ongoing for several years. The procedural history relevant to this matter is as follows:

1. September 7, 2022—The USPTO issued a Show Cause Order ("2022 Show Cause Order") to Respondents. This 2022 Show Cause Order implicated 13,131 applications and registrations. *See* https://developer.uspto.gov/tm-

[1] Respondents include Shenzhen Chenhaiyun Tech. Co., Ltd. subsidiaries Shenzhen Seller Growth Network Tech. Co., Ltd., Shenzhen Qianhai Bishengdao Network Tech. Co., Ltd., and Shenzhen Qianhai Be-Victory Network Tech. Co., Ltd., and Chenhai Cloud IIPTO and their various corporate officers, including Yongchao Wang, Gao Feng, and Yushuo Sun (collectively "Seller Growth" or "Respondents"). Respondents indicate that they are unfamiliar with the name "Chenhai Cloud IIPTO", however, they do appear to acknowledge utilizing multiple aliases. Since the issuance of the 2023 Show Cause Order, Respondents appear to have again rebranded their enterprise as Henghshenghe Co. Ltd.

decisions/search/administrative

2. October 12, 2022—Ten owners of applications and registrations identified in the 2022 Show Cause Order submitted declarations and requested to intervene in the administrative sanctions proceeding. Exhibit B.

3. October 31, 2022—The USPTO responded directly to counsel representing the owners explaining that owners address concerns about their particular applications or registrations through a Petition to the Director. Exhibit C.[2]

4. November 2, 2022—Respondents filed a response to the 2022 Show Cause Order ("2022 Response"). Exhibit D.

5. November 27, 2023—The USPTO issued a Supplemental Show Cause Order ("2023 Show Cause Order"). *See* https://developer.uspto.gov/tm-decisions/search/administrative

6. March 24, 2024—Respondents responded to the 2023 Show Cause Order ("2024 Response"). Exhibit E.

7. February 24, 2025—The USPTO issued a Supplemental Order to Show Cause and Notice that the USPTO Proposes to Reconsider Its Registration Decisions ("2025 Show Cause Order"). Respondents did not respond. *See* https://developer.uspto.gov/tm-decisions/search/administrative

8. February 2025 – March 2025—89 Registrants responded to the 2025 Show Cause Order with arguments why the USPTO should not exercise its inherent authority to reconsider its registration decisions and the Serial Number or Registration Number removed from the administrative show cause proceeding ("2025 Registrant Responses").

9. June 2025 – July 2025—The USPTO sent individual decision letters to the 2025 Registrant Responses.[3]

10. July 28, 2025—The USPTO issued its Order Reconsidering Registration Decisions ("2025 Reconsideration Order"), which vacated the registration

[2] None of the owners availed themselves of this option. *See* U.S. Serial Nos. 88601797, 88720910, 88917218, 90034622, 90125808, 90155845, 90291229, 90187621, 90159031, 90178098, 90187572, and 88572432.

[3] The letters were issued to the registrants and uploaded into the USPTO's electronic records in the Trademark Status and Document Retrieval System ("TSDR") for the involved registration numbers. The letters explained that the registrant's request to be removed from the proceeding was denied based on available filing data demonstrating that Respondents were responsible for making improper submissions to the USPTO in connection with their registrations. The notice was sent to the correspondence email address of record, which is the address an applicant must provide for purposes of receiving official communications from the USPTO. 37 C.F.R. § 2.23(b).

decision for the records identified in the 2025 Show Cause Order, and reopened the relevant proceedings.[4]

Additionally, from October 2021 to March 2024, the USPTO Office of Enrollment and Discipline ("OED") issued six Final Orders that describe Respondents' practice of improperly entering the names and signatures of U.S.-licensed attorneys and using their bar credentials to directly prosecute applications before the USPTO (the "OED Orders").[5]

### B. Legal Background

#### 1. Sanctions Authority

The authority to impose sanctions falls within the USPTO's authority to manage the administration of trademark proceedings and its docket by addressing Respondents' submissions that, for the reasons set out below, violate USPTO Rules governing representation and signature rules.

35 U.S.C. §§3(a) and 3(b) establish the Director's statutory authority to provide policy direction for and manage the issuance of trademark registrations, including the authority to manage its dockets and impose appropriate sanctions necessary to address USPTO Rules or Terms of Use violations that impact USPTO proceedings. 35 U.S.C. §3(a)-(b); 37 C.F.R. §11.18(c); *see In re Stelcore Mgmt. Servs., LLC*, 2025 2025 Commr. Pat. LEXIS 3, at *22-27 (Dir. USPTO 2025); *see also In re Yusha Zhang,* 2021 Commr. Pat. LEXIS 2 at *14-16 (Dir. USPTO 2021). Further, the Office has been provided with separate broad authority under 35 U.S.C. §2(b)(2)(A) to establish regulations governing the conduct of proceedings in the Office. *See also* 15 U.S.C. §1123 (repeating the authority specifically for trademark matters). The agency also has "inherent discretion . . . to manage its own docket." *Cf. The Last Best Beef, LLC v. Dudas*, 506 F. 3d 333, 340-341 (4th Cir. 2007) (holding that the USPTO "has inherent discretion . . . to manage its own docket").

Additionally, all submissions to the USPTO in trademark matters are governed by U.S. trademark laws and the regulations governing practice in trademark matters before the Office, including the rules concerning signatures, certification, and representation of others (collectively, "USPTO Rules"). *See generally* 15 U.S.C. §§1051 *et seq*.; 37 C.F.R.

---

[4] Exhibit A to this order includes all serial numbers related to this administrative proceeding, including serial numbers for the reopened proceedings.

[5] *In the Matter of Di Li*, Proceeding D2021-16 (USPTO Oct. 7, 2021), available at https://foiadocuments.uspto.gov/oed/Li-Final-Order-(D2021-16).pdf; *In the Matter of Elizabeth Yang*, Proceeding D2021-11 (Dec. 17, 2021), available at https://foiadocuments.uspto.gov/oed/Final-Order-(Yang)-(D2021-11).pdf; *In the Matter of Kathy Q. Hao*, Proceeding D2021-14 (Apr. 27, 2022), available at https://foiadocuments.uspto.gov/oed/Final-Order-(Hao)-(D2021-14).pdf; *In the Matter of Weibo Zhang,* Proceeding D2022-16 (USPTO Jul. 11, 2022), available at https://foiadocuments.uspto.gov/oed/Zhang-Final-Order-(D2022-16)_Redacted.pdf; *In the Matter of Jingfeng Song,* Proceeding D2023-10 (USPTO May 1, 2023), available at https://foiadocuments.uspto.gov/oed/Song-Final-Order-(D2023-10)-dated-05-01-23-and-mailed-5-04-23-Redacted.pdf; *In the Matter of Che-Yang Chen,* Proceeding D2024-01 (USPTO Mar. 20, 2024), available at https://foiadocuments.uspto.gov/oed/Chen-Final-Order-(D2024-01)-Final-Redacted.pdf.

Parts 2, 11. Protecting the integrity of the U.S. trademark register is of the utmost concern to the USPTO because the register is intended to reflect trademarks actually used in commerce; its accuracy serves the critical purpose of avoiding needless costs and burdens to applicants, who rely upon its contents when choosing a mark. *See Norton v. Curtiss*, 433 F.2d 779, 794 (CCPA 1970); *see also Look Cycle Int'l v. Kunshan Qiyue Outdoor Sports Goods Co., Ltd.,* Can. No. 92079409, 2024 TTAB LEXIS 289 (2024). Providing false information in a trademark submission to obtain or maintain a registration undermines the integrity of the examination process and the register, and those who provide false, fictitious, or fraudulent information are subject to sanctions. *See Stelcore,* 2025 Commr. Pat. LEXIS 3, at *26; *see also Zhang,* 2021 Commr. Pat. LEXIS 2 at *10, *23-24.

Further, only attorneys who are active members in good standing of the bar of the highest court of a U.S. state or jurisdiction may practice before the USPTO in trademark matters on behalf of others. 37 C.F.R. §§2.17(a), 11.1, 11.14(a); s*ee also* 5 U.S.C. §500(b). Foreign domiciled parties must be represented by a qualified U.S.-licensed attorney before the USPTO, and this rule has been a requirement in effect since August 3, 2019. 37 C.F.R. §2.11. Regardless of the applicant's or registrant's domicile, individuals who are not U.S.-licensed attorneys may not (1) give advice to an applicant or registrant in contemplation of filing a U.S. trademark application, application-related or registration-related document; (2) prepare or prosecute any U.S. trademark application, response, or post-registration maintenance document; (3) sign amendments to applications or registrations, responses to Office actions, petitions to the Director, or request to change correspondence information; or (4) authorize any other amendments to an application or registration.[6] *See* 37 C.F.R. §11.5(b)(3).

### 2. Rules Governing Signatures on Submissions

#### a. Generally

All signed documents must comply with Rule 2.193 and therefore must be *personally* signed by the named signatory, including the personal entry of all electronic signatures.[7] *See* 37 C.F.R. §§2.193(a), (c), 11.18(a); Trademark Manual of Examining Procedure ("TMEP") §611.01(b) (May 2025 ed.). A person may not delegate the authority to sign trademark-related submissions, and no party may sign the name of another. *See Zhang*, 2021 Commr. Pat. LEXIS 2 at *10; *In re Dermahose Inc.,* Ser. No. 76585901, 2007 TTAB LEXIS 25, at *9-10 (2007); *In re Cowan*, Reg. No. 1225389, 1990 Commr. Pat. LEXIS 24,

[6] While there is a limited exception for Canadian agents or attorneys who have been granted reciprocal recognition to practice before the Office in trademark matters for Canadian filers, that exception does not apply here.

[7] In the relevant time period, the trademark electronic system forms allowed for two ways to sign a document electronically: 1) the signatory directly enters the signature in the signature field on the electronic form ("Direct Signature"), or 2) the signatory receives an emailed link to the form, which allows them to enter their electronic signature in the signature field ("ESIGN-ON"). The trademark electronic system forms now also allow for electronic signatures entered using document-signing software, however, this method was not used in any of the submissions referenced in this order. *See* TMEP §611.01(c)(ii).

at *5-6 (Comm'r Pats. 1990); *see also* TMEP §§611.01(b)-(c), 804.04. For example, a paralegal, legal assistant, or secretary may not sign or enter the name of an attorney or other authorized signatory. TMEP §611.01(b). A trademark submission that is signed by a person other than the named signatory, is improperly executed, and cannot be relied upon to support registration. *See Stelcore,* 2025 Commr. Pat. LEXIS 3, at *5; *Zhang*, 2021 Commr. Pat. LEXIS 2 at *10; *Ex parte Hipkins,* Appeal No. 90-2250, 1991 Pat. App. LEXIS 14, at *10-13 (BPAI 1991); *Cowan*, 1990 Commr. Pat. LEXIS 24, at *5-6. A signature that does not meet the "personally signed" or "personally entered" requirements, *see* 37 C.F.R. §§2.193(a), (f), 11.18(a), "may jeopardize the validity of [an] application or registration." 37 C.F.R. §2.193(f). Thus, these signature requirements are not merely technical in nature but rather are substantive.[8] *Stelcore*, 2025 Commr. Pat. LEXIS 3, at *5-6.

The requirement for personally-entered signatures is not new. It has been in place for more than 20 years. 68 Fed. Reg. 48286, 48290 (2003). The TMEP has included a reference to the requirement since at least as early as 2005. TMEP §§302, 602.03 (4th ed., April 2005). And, since at least as early as 2012, the TMEP has included examples about what is not permissible under the "personally signed" requirement: "All documents must be personally signed . . .. Another person (e.g., paralegal, legal assistant, secretary) **may not sign** the name of an attorney or other authorized signatory." TMEP §611.01(b) §611.01(b) (October 2012 ed.) (emphasis added).[9]

**b. The ex parte process demands adherence to the rules**

Trademark examination is an ex parte process, in which determinations about whether the requirements for registration or the requirements for maintenance of a registration have been satisfied are based on an applicant's or registrant's representations. The averments in trademark submissions provide facts material to registrability, including information about use of a mark in commerce or bona fide intention to use a mark in commerce, and, in the case of post-registration submissions, information relevant to the continued maintenance of a registration, all of which are statutorily prescribed. *See* 15 U.S.C. §§1051(a)(3), 1051(b)(3), 1058-1059. These averments, which are set out explicitly in many trademark electronic system forms, must be supported by a signed verification or declaration, as described in 15 U.S.C. §§1051(a)(3), 1051(b)(3), 1058-1059, signed by an individual authorized to verify these facts, as set out in 37 C.F.R.

[8] In *Nallapati v. Justh Holdings, LLC*, No. 5:20-CV-47-D, 2023 U.S. Dist. LEXIS 39878 (E.D.N.C. Mar. 9, 2023), the court determined that an improperly entered signature was a "technical error." The USPTO disagrees with that characterization, and it was not a party to that case. Moreover, importantly, even the court in *Nallapati* recognized that concerted efforts to abuse the USPTO's rules and procedures are distinguishable from the facts of that case. *Id.* at *7.

[9] Public presentations by the USPTO have emphasized the importance of personally entering signatures. *See, e.g.*, https://www.uspto.gov/learning-and-resources/uspto-videos/representation-signatures-and-ethical-issues-trademark-cases. And numerous trademark attorneys have been publicly disciplined by the USPTO Director under the USPTO Rules of Professional Conduct for violating the USPTO trademark signature rules. *See* FOIA Documents at https://foiadocuments.uspto.gov/oed/.

§2.193(e)(1) (identifying attorneys and persons with legal authority to bind the owner or firsthand knowledge of the facts, as authorized to verify).

The Office and the public necessarily rely upon the truth and accuracy of those averments and other representations. *See Norton* 433 F.2d at 794 ("With the seemingly ever-increasing number of applications before it, the [USPTO] . . . must rely on applicants for many of the facts upon which its decisions are based.); *see also Zhang*, 2021 Commr. Pat. LEXIS 2 at *10, 26. Thus, "the highest standards of honesty" must be adhered to by parties presenting facts to the Office as they have so often been held essential in the proper functioning of the patent and trademark registration systems. *See Doctor Vinyl & Assocs. V. Repair-It Indust.*, 1983 TTAB LEXIS 43 (1983) (*citing e.g., Norton*, 433 F.2d at 779, 57 CCPA at 1384); s*ee also* 37 C.F.R. §11.303(d) (USPTO Rules of Professional Conduct's duty of candor to tribunals, such as the USPTO, in ex parte proceedings).[10] When the representations are inaccurate, they undermine the integrity of the Trademark Register. *Stelcore*, 2025 Commr. Pat. LEXIS 3, at *7.

With specific respect to signature requirements, the identity of the signatory determines the effect of a document. The USPTO relies on the filing party's truthfulness in identifying the signatory to determine whether to accept submissions to further advance the examination of an application or registration. *See* 37 C.F.R. §§2.62(b), 2.74(b), 2.163(b); *see also* TMEP §§606, 611.01, 611.05 *et seq*., 712, 718.01, 1604.08(a), 1604.16. If, for example, certain submissions are not signed by an individual who is authorized under the USPTO rules to sign, those submissions are given no effect and the Office will require a properly signed response in order to advance prosecution. TMEP §§712.03; 1604.16. If, at that point, the Office does not receive a properly signed response, the application will be held abandoned for failure to file a complete response or the registration will be cancelled. *Id.* It necessarily harms the registration process when submissions are not personally signed by the named signatory. The Office is left without complete or accurate information as to whether the person who executed the document had the requisite knowledge necessary to attest to factual contentions, or whether the person was an authorized signatory.[11] False signature information substantially prejudices the USPTO's

---

[10] In the patent context, courts have long held that applicants and practitioners before the USPTO are in a relationship of confidence and trust to the agency and that that the duty of candor to the USPTO is "uncompromising." *See Norton*, 433 F.2d at 794; see *also Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983); *GE v. Mitsubishi Heavy Indus.*, 946 F. Supp. 2d 582, 588 (N. Dist. Texas 2013). *See also* 37 C.F.R. Part 11, which includes rules of professional conduct which set forth the duties and standards of conduct incumbent upon registered practitioners (as defined in 37 C.F.R.§ 11.1) before the USPTO. Such duties include competency, confidentiality, conflicts of interest, honesty toward third parties, and many others. 37 C.F.R. 11.101-11.804. A practitioner who presents a document to the USPTO is responsibile for conducting an inquiry reasonable under the circumstances to support the certifications set forth in 37 C.F.R. § 11.18(b). Nothing in this order precludes an USPTO Office of Enrollment and Discipline ("OED") investigation or enforcement under 37 C.F.R. § 11.101-804.

[11] Merely submitting a potentially corrective signature in the record does not insulate an application or registration from later being challenged based on the effects of the original improperly-entered signature and the certification of the information submitted, or from inclusion or reference in an administrative sanctions or disciplinary proceeding. *See Norton,* 433 F.2d at 794 ("While being a fact-finding as well as an

ability to carry out its mandate to register only those marks for which the appropriate factual foundation supports registration.

### 3. Rule 11.18 Certifications and Violations

Under USPTO Rules, any party who presents a trademark submission to the USPTO is certifying that "the paper is not being presented for any improper purpose" and "[t]he allegations and other factual contentions have evidentiary support." 37 C.F.R. §11.18(b); *see also* 37 C.F.R. §2.193(f) (noting that presentation of any document to the USPTO constitutes certification under 37 C.F.R. §11.18(b)). By presenting a paper to the Office, a person is certifying, among other things, the veracity of the information contained therein, that a reasonable inquiry has been undertaken to ensure that the paper is not being presented for an improper purpose, and that any allegations and other factual contentions have evidentiary support. 37 C.F.R. §11.18(b)(1)-(2).

Submitting a document that includes false, misleading, fictitious, or fraudulent information or representations violates 37 C.F.R. §11.18(b)(1). This includes, for example, false or misleading domicile information, attorney information, signatory information (e.g., where the named signatory did not personally enter his or her signature on the document), applicant information, or claims of use (or intent to use). Submitting a document without undertaking a reasonable inquiry into the factual basis for the averments, without evidentiary support, in an effort to circumvent USPTO Rules, or coupled with other rule or Terms of Use violations constitutes an improper purpose and violates 37 C.F.R. §11.18(b)(2). *See also* 37 C.F.R. §2.11(e). Violations of 37 C.F.R. §11.18(b)(2) may result in sanctions under 37 C.F.R. §11.18(c); *see also* 37 C.F.R. §2.193(f); *Bang-er Shia,* Proceeding No. D2014-31, at *10-12 (USPTO Apr. 22, 2015) (Recon. Denied Aug. 1, 2016); *Zhang*, 2021 Commr. Pat. LEXIS 2, at *10, 26. It may also result in referral of a practitioner's conduct to the Director of OED for appropriate action. *See* 37 C.F.R. §11.18(c)(4).

### 4. Policies governing Use of USPTO.gov Systems

Any party who uses USPTO systems, including the USPTO.gov website and electronic filing systems, is bound by both the Terms of Use for USPTO websites and the USPTO Trademark Verified USPTO.gov Account Agreement.

Under the Terms of Use, registration for, and use of, a USPTO.gov account is limited to the individual to whom the account is registered, and the registered individual is responsible for all activities occurring under that account and, in the case of U.S.-licensed attorneys, any sponsored accounts. Use of a USPTO.gov account to submit, access, or alter information exceeding one's authority not only breaches the Terms of Use, but may

---

adjudicatory agency, [the USPTO] is necessarily limited in the time permitted to ascertain the facts necessary to adjudge the . . . merits of each application. . .. Clearly, [the USPTO] must rely on applicants for many of the facts upon which its decisions are based. The highest standards of honesty and candor on the part of applicants in presenting such facts to the office are thus necessary elements . . . .").

also violate other USPTO Rules including but not limited to 37 C.F.R. §§2.193(f) and 11.18(b).

### C. Factual Overview

The previous 2022 Show Cause Order, 2023 Show Cause Order, 2025 Show Cause Order, and Order Reconsidering Registration Decisions, incorporated by reference, set out the evidence demonstrating Respondents' misconduct that forms the basis for imposing sanctions.[12] More detail is also provided in the discussion below.

In high-level terms, the USPTO has identified tens of thousands of serial numbers in which Respondents' submissions repeatedly and willfully violated USPTO Rules. These trademark records include Respondents' violations of the rules concerning signatures, certifications, and representation of others before the USPTO, as well as the Terms of Use. Respondents repeatedly engaged in the unauthorized practice of law, prosecuting trademark submissions on behalf of others without the requisite qualifications required by 37 C.F.R. §11.14. To conceal their unauthorized practice of law, Respondents engaged in a widespread pattern of impermissibly signing submissions using others' names. To further disguise their misconduct, Respondents entered into arrangements with a number of attorneys who were later subject to discipline by OED for violating USPTO rules of practice before the Office.[13] Respondents falsely identified U.S.-licensed attorneys as the signatories for thousands of trademark documents when, in fact, Respondents were the signatories to those documents.

Respondents' unauthorized practice of law, combined with Respondents' other repeated and widespread USPTO Rule violations designed to hide their unauthorized practice of law, significantly harmed the USPTO's ability to comply with its statutory mandate to register only those marks which meet the statutory requirements for registration, or maintain only those registrations meeting the statutory requirements for maintenance, and make correct and reliable registration decisions.

## II. Findings

### A. Respondents engaged in a widespread pattern of violating USPTO Rules to conceal their unauthorized practice of law involving thousands of trademark proceedings, and are subject to sanctions.

The previous orders set out the evidence demonstrating Respondents' misconduct that forms the basis for imposing sanctions. Respondents repeatedly engaged in the unauthorized practice of law, submitting documents on behalf of others without the requisite qualifications or authority to represent others before the Office. To conceal their

[12] Links to orders issued under the authority of the Commissioner for Trademarks are available at https://developer.uspto.gov/tm-decisions/search/administrative

[13] See footnote 5, OED Orders; *see also In the Matter of Francis Huisuk Koh,* Proceeding D2024-07 (USPTO Feb. 7, 2024), available at https://foiadocuments.uspto.gov/oed/Koh-Final-Order-(D2024-07)-Redacted.pdf.

unauthorized practice of law, Respondents engaged in a widespread pattern of impermissibly signing submissions using others' names. Respondents falsely identified U.S.-licensed attorneys as the attorney of record or signatory for thousands of trademark documents, falsifying the attorney's electronic signature.

**1. Respondents engaged in the unauthorized practice of law.**

Consistent with the USPTO's evidence, including the stipulated facts within the OED Orders,[14] and findings in the Show Cause Orders, Respondents concede that they had no U.S. legal training, yet they repeatedly gave advice to applicants or registrants in contemplation of filing trademark submissions, prepared, prosecuted, and signed trademark submissions, and signed amendments or responses to official letters, often using the signatures of others. 2022 Response, p. 9 (describing how Respondents would require different application materials or correct application information); *Id.*, p. 10 (admitting to preparing and submitting "substantive content" in application and registration proceedings). That is, Respondents admit that they engaged in the unauthorized practice of law. *See* 37 C.F.R. §§2.17, 11.5(b)(3) (identifying Respondents' activity as practice before the Office).

Respondents make no attempt to deny or disprove the stipulations in the OED Final Orders, which include stipulations by attorneys, with whom Respondents contracted, to violations of the USPTO Rules of Professional Conduct and the attorneys' roles in enabling or aiding Respondents' unauthorized practice of law and circumvention of USPTO Rules by providing false attorney and signatory information, and falsified or forged signatures. *See generally* 37 C.F.R. Part 11, cited therein.

Rather, Respondents characterize their unauthorized practice of law as a misunderstanding, or merely a mistake, asserting that preparation and submission of trademark forms would not be understood to be the practice of law. 2024 Response, pp. 55-56. Respondents also argue that they did not know any better and were relying on the counsel they purportedly received from attorneys they consulted.

Respondents' claimed ignorance of the law provides no defense or excuse for avoiding sanctions.[15] *See, e.g., U.S. v. Int'l Min. & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation."); *Barlow v. U.S.*, 32 U.S. 404 (1833) (stating "[i]t is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally"); *In re Whittelsey*, 83 F.2d 894 (C.C.P.A. 1936) ("It is a familiar rule that ignorance of the law is not an excuse for a course of action.").

---

[14] *See* footnotes 5, 13, OED Orders, *supra*.

[15] Even if arguendo, Respondents did not employ a scheme to intentionally deceive the USPTO, Respondents' conduct need not be willful to be sanctionable. Whether the improper conduct was willful or negligent is merely one of many possible considerations in determining an appropriate action or sanction under 37 C.F.R. § 11.18(c). See 73 Fed. Reg. 47650, 47653 (Aug. 14, 2008).

USPTO Rules have stated for more than a decade that only individuals meeting the requirements of 37 C.F.R. §11.14 are authorized to represent others before the USPTO in trademark matters. *Compare* Trademark Manual of Examining Procedure ("TMEP") §608.01 (July 2022 ed.), *with* §608.01 (October 2012 edition) (both indicating that "[a]n individual who does not meet the requirements of 37 C.F.R. §11.14 cannot: prepare an application, response, . . . or other document to be filed in the USPTO; sign amendments, responses to Office actions, petitions to the Director under 37 C.F.R. §2.146 . . . or otherwise represent an applicant, registrant, or party to a proceeding in the USPTO."). Regardless of an applicant's or registrant's domicile, individuals who are not U.S.-licensed attorneys may not (1) give advice to an applicant or registrant in contemplation of filing a U.S. trademark application or application-related document; (2) prepare or prosecute any U.S. trademark application, response, or post-registration maintenance document; (3) sign amendments to applications, responses to Office actions, petitions to the Director, or request to change correspondence information; or (4) authorize any other amendments to an application or registration. *See* 37 C.F.R. §11.5(b). *See also* 37 C.F.R. §§2.11(a), 11.5(b).

Respondents are not U.S.-licensed attorneys and thus are not, and never have been, authorized to practice before the Office in trademark matters on behalf of others. *See* 5 U.S.C. §500; *see also* 37 C.F.R. §§11.1, 11.14. Individuals who are not U.S.-licensed attorneys may not (1) give advice to an applicant or registrant in contemplation of filing a U.S. trademark application or application-related document; (2) prepare or prosecute any U.S. trademark application, response, or post-registration maintenance document; (3) sign amendments to applications, responses to Office actions, petitions to the Director, or request to change correspondence information; or (4) authorize any other amendments to an application or registration. *See* 37 C.F.R. §11.5(b). *See also* 37 C.F.R. §§2.11(a), 11.5(b). Respondents repeatedly gave advice to applicants or registrants in contemplation of filing trademark submissions, prepared and prosecuted trademark submissions directly before the USPTO, and signed and authorized amendments or responses to official letters, often using the signatures of others, despite being unauthorized to do so.

The totality of evidence demonstrates that Respondents engaged in the unauthorized practice of law in violation of USPTO rules governing representation and practice before the Office.

### 2. Respondents are responsible for tens of thousands of USPTO rule violations, filing trademark submissions bearing false signatures, containing false information, and without factual support

Respondents purposefully concealed their unauthorized practice of law and circumvented USPTO Rules governing representation and signatures through a longstanding and widespread pattern and practice of filing submissions with false or misleading information and improperly entered signatures in violation of USPTO Rules. *See* 37 C.F.R. §§2.11(a),

2.193. Respondents' own solicitation message demonstrates that they purposefully devised methods to circumvent USPTO Rules. *See* 2022 Show Cause Order, Exhibit D.

As stipulated by disciplined attorneys in OED Orders, Respondents engaged in a pattern and practice of contracting with U.S.-licensed attorneys to use attorneys' names, bar credentials, and USPTO.gov accounts to file applications and other submissions in trademark proceedings, on which Respondents forged the electronic signatures of the attorneys. *In the Matter of Di Li*, Proceeding D2021-16 (USPTO Oct. 7, 2021), available at https://foiadocuments.uspto.gov/oed/Li-Final-Order-(D2021-16).pdf; *In the Matter of Elizabeth Yang*, Proceeding D2021-11 (Dec. 17, 2021), available at https://foiadocuments.uspto.gov/oed/Final-Order(Yang)-(D2021-11).pdf; *In the Matter of Kathy Q. Hao*, Proceeding D2021-14 (Apr. 27, 2022), available at https://foiadocuments.uspto.gov/oed/Final-Order-(Hao)-(D2021-14).pdf; *In the Matter of Jingfeng Song,* Proceeding D2023-10 (USPTO May 1, 2023), available at https://foiadocuments.uspto.gov/oed/Song-Final-Order-(D2023-10)-dated-05-01-23-and-mailed-5-04-23-Redacted.pdf; *In the Matter of Che-Yang Chen,* Proceeding D2024-01 (USPTO Mar. 20, 2024), available at https://foiadocuments.uspto.gov/oed/Chen-Final-Order-(D2024-01)-Final-Redacted.pdf. The stipulated facts are consistent with evidence, including Respondents' contracts with attorneys and the USPTO's filing data indicating that the attorney signatures were not personally entered by the attorneys or that Respondents were directly involved in the prosecution of these records before the USPTO.

As demonstrated in the 2022 Response to the 2022 Show Cause Order, Respondents included provisions in their contracts which explicitly stated that the attorneys, Ms. Di Li, Ms. Kathy Hao, and Ms. Elizabeth Yang "agree[] that [Respondents] shall sign the name of the lawyer in the completed information" and that "[Respondents] shall fill in all the information of [Ms. Li/Ms. Hao/Ms. Yang] after signing."

USPTO filing data for submissions from USPTO.gov accounts registered to Respondents demonstrates filing patterns that support only one conclusion: that Respondents were falsely identifying signatories, attorneys, and providing false electronic signatures. For example, Exhibit V to the 2023 Show Cause Order identifies 839 submissions, including applications, Section 8 declarations, and Office action responses, that could not have been personally signed by the identified signatory, the named attorney of record. USPTO evidence demonstrates that in a one-month period, a single USPTO.gov account was responsible for nearly one thousand Trademark Electronic Application System ("TEAS") forms submitted so close in time including several filed at the exact same time from different computer networks, with the direct signature of a single attorney, that is would be virtually impossible for the signatures to have been properly entered by the named signatory.

Many of Respondents' submissions included new applications filed via TEAS, which require a verified statement alleging, among other things, that the facts set forth in the application are true. *See* 37 C.F.R. §§2.33(a)-(b). The TEAS application form begins with a prompt for the filer to identify whether the applicant is represented by a U.S.-licensed

attorney and ends with verification statements, including that the facts set forth in the application are true, which must be acknowledged and personally signed by a proper signatory pursuant to 37 C.F.R. §2.193. *See* 37 C.F.R. §2.33. Respondents routinely misidentified themselves as either the applicant or an attorney, even though the Respondents were neither. Respondents improperly entered the signatures of the named signatories on declarations while explicitly affirming their understanding that "false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom." *See* 37 C.F.R. §2.20; *see also* 37 C.F.R. §11.18(b)(1).

Therefore, Respondents violated USPTO Rules that require that all signed documents submitted to the USPTO in a trademark matter must be *personally* signed. 37 C.F.R. §§2.193(a), (c); TMEP §611.01(b). Although Respondents assert ignorance or misunderstanding of the USPTO Rules, 2024 Response, pp. 55-56, these rules have been in place for more than 20 years. 68 Fed. Reg. 48286, 48290 (2003); see TMEP §§302, 602.03 (4th ed., April 2005) for earlier explanations of the rule. And, since at least as early as 2012, the TMEP has included examples about what is not permissible under the "personally signed" requirement: "All documents must be personally signed . . . Another person (e.g., paralegal, legal assistant, secretary) **may not sign** the name of an attorney or other authorized signatory." TMEP §611.01(b) §611.01(b) (October 2012 ed.) (emphasis added).[16] A person may not delegate the authority to sign trademark-related submissions, and no party may sign the name of another. *See Stelcore*, 2025 Commr. Pat. LEXIS 3, at *5-6; *Zhang*, 2021 Commr. Pat. LEXIS 2 at *9; *Dermahose,* 2007 TTAB LEXIS 25, at *9-10; *Cowan*, 1990 Commr. Pat. LEXIS 24, at *5-6; *see also* TMEP §611.01(b)-(c). *Hipkins*, 1991 Pat. App. LEXIS 14, at *10-13.

### 3. There Are Serious Defects in the Signatures that Cannot Be Ratified or Corrected.

The totality of the evidence indicates that the averments in the relevant proceedings are supported by forged applicant, registrant, or attorney signatures. Thus, they cannot be relied upon to determine registrability. *See, e.g., Hipkins*, 1991 Pat. App. LEXIS 14, at *10-13; *Cowan*, 1990 Commr. Pat. LEXIS 24, at *5-6. An application or other trademark submission that is signed by a person other than the named signatory, or by a person determined to be an unauthorized signatory per Rule 2.193, is improperly executed and cannot be relied upon to support registration or maintenance of a registration. *See Zhang*, 2021 Commr. Pat. LEXIS 2 at *10. A signature that does not meet the "personally signed" or "personally entered" requirements, *see* 37 C.F.R. §§2.193(a), (f), 11.18(a), "may jeopardize the validity of [an] application or registration." 37 C.F.R. §2.193(f).

[16] Public presentations by the USPTO have emphasized the importance of personally entering signatures. *See, e.g.*, https://www.uspto.gov/learning-and-resources/uspto-videos/representation-signatures-and-ethical-issues-trademark-cases. And numerous trademark attorneys have been publicly disciplined by the USPTO Director under the USPTO Rules of Professional Conduct for violating the USPTO trademark signature rules. *See* FOIA Documents at https://foiadocuments.uspto.gov/oed/.

Falsely identifying the signatory and falsifying signatures on Office action responses caused the USPTO to treat the responses as signed by an authorized signatory, though they were not. *See* TMEP §§601, 611, 712. The USPTO relies on the filing party's truthfulness in identifying the signatory to determine whether to accept submissions to further advance the examination of an application or maintenance of a registration. *See* 37 C.F.R. §§2.62(b), 2.74(b), 2.163(b); *see also* TMEP §§606, 611.01, 611.05 et seq., 712, 718.01.

For many, if not all, of the trademark proceedings in which Respondents misrepresented the identity of the signatory and falsified applicant, registrant, or attorney signatures, Respondents' misrepresentations advanced prosecution where it was not merited and avoided abandonment or cancellation of the registration. 37 C.F.R. §§2.62(b), 2.74(b), 2.163(b); *see also* TMEP §§611.05(c); 712.03; *Mini Melts, Inc. v. Reckitt Benckiser*, 2009 U.S. Dist. LEXIS 148588 at *6 (E.D. TX 2009) (finding that had the USPTO known that the maintenance filing was not signed by the identified declarant, the registration would have been cancelled). For the applicants or registrants identified as foreign-domiciled, only responses or amendments signed by a U.S.-licensed attorney would be deemed properly signed and acceptable. *See* 37 C.F.R. §§2.11(a), 2.62(b), 2.74(b), 2.163(b); *see also* TMEP §§606, 611.01, 611.05 *et seq*., 712, 718.01. If Respondents had not misrepresented the identity of the signatory and the Office was aware that the responses were not properly signed by an authorized signatory, those submissions would have been given no effect as noncompliant with USPTO Rules. *See* 37 C.F.R. §§2.62(b), 2.74(b), 2.163(b); *see also* TMEP §§611.05(c); 712.03. In this context, the Office will require a properly signed response in order to advance prosecution.[17] TMEP §712.03. If, at that point, the Office receives no properly signed response, the application or registration will be held abandoned for failure to file a complete response. TMEP §§712.03, 1604.07(a). Further, in this context, unless a properly signed response was submitted to the Office, the application would be held abandoned for failure to file a complete response. TMEP §§611.05(c); 712.03. As such, not only did Respondents' forgery advance prosecution where it was not merited, but also avoided abandonment of the application, all under false pretenses. *See* TMEP §§611.05(c); 712.03. Moreover, the forgery concealed Respondents' unauthorized practice of law.

Respondents cite *Nallapati v. Justh Holdings, LLC*, No. 5:20-CV-47-D, 2023 WL 2436008, at *6 (E.D.N.C. Mar. 9, 2023) for the proposition that the improperly entered signatures are merely a "technical error." 2024 Response, pp. 60. However, importantly, even the court in *Nallapati* recognized that concerted efforts to abuse the USPTO's rules and procedures are distinguishable from the facts of that case. *Id.* at *7. Thus, given the evidence that Respondents' signature rule violations were part of a widespread pattern

[17] Although TMEP §712.03 provides a procedure for processing responses to Office actions signed by an improper party, there are limited circumstances in which the procedure applies. Importantly, this procedure relies on a signatory truthfully identifying themselves so that the Office may make a determination as to whether the identified signatory is a proper party to sign, thereby allowing the Office to decide whether the facts presented in the submission are trustworthy. *See* TMEP § 712.03 (identifying examples as where a foreign attorney or corporate employee signs). The procedure "to perfect the response" will not cure any defects in an original signature to avoid the imposition of sanctions by the USPTO if additional rule violations or Terms of Use violations are later discovered.

and practice of rule violations designed to conceal their unauthorized practice of law, these signature requirements are not merely technical in nature but rather are substantive. *Stelcore*, 2025 Commr. Pat. LEXIS 3, at *24-25.

Under 35 U.S.C. §26, the Director has the discretion to permit correction of defectively executed documents, with the principal factors to be considered being: (1) the seriousness of the defect and (2) steps taken by the party to effectuate a proper execution. *In re Weide*r, 1981 Commr. Pat LEXIS 5, at *6 (Comm'r Pats 1981). Critically, only if the defect is minor, and the "surrounding circumstances establish that a party exercised reasonable care to effect a proper execution," could a document be accepted under 35 U.S.C. §26. *Weider*, 1981 Commr. Pat LEXIS 5, at *6.[18] In contrast, serious defects and those not born out of an exercise of reasonable care are neither correctable nor able to be perfected. *See id.* at *5.

Respondents engaged in a practice of falsely identifying signatories because truthful identification of the signatory would not satisfy signature or representation requirements, and the signatures were not entered by the named signatory in violation of 37 C.F.R. §2.193, to conceal the unauthorized practice of law. Thus, for the reasons, set out above, the signature defects here are substantive, not technical or minor. *Weider*, 1981 Commr. Pat LEXIS 5, at *5. Further, Respondents' pattern of serious misconduct far surpasses a failure to take "reasonable care" to effectuate a proper execution of applications and responses to Office actions. *See id*. Therefore, ratification or correction under 35 U.S.C. §26, is not appropriate because, as set out above, the defects are serious, and Respondents cannot demonstrate that the "surrounding circumstances establish that a party exercised reasonable care to effect a proper execution." *Id*.; *Stelcore*, 2025 Commr. Pat. LEXIS 3, at *24-25.

**4. Respondents repeatedly submitted documents without factual support**

In addition to providing false signatory information and falsified signatures, Respondents also submitted digitally altered or mocked-up specimens in at least 2500 applications, thus demonstrating a pattern of submitting falsified evidence to circumvent use-in-commerce requirements or, at the very least, submitting documents without factual

[18] Examples from cases cited in *In re Weider*, include *Carl Zeiss Stiftung v. JENAer Glaswerk Schott & Gen.*, 184 USPQ 355 (Comr. Pats. 1974) (notary before whom verification of a Notice of Opposition under Section 13 of the Trademark Act was made was a notary of the German Democratic Republic and not an appropriate official to administer oaths in a foreign country, under the provisions of Section 11 of the Trademark Act); *Ex parte Louisville & Nashville R.R.*, 171 USPQ 49 (Comr. Pats. 1971) (failure by notary to fill in the appropriate blanks in a jurat statement accompanying an affidavit under Section 8 of the Trademark Act); *Lucien Piccard Watch Corp. v. Countess da Vinci*, 167 USPQ 239 (Comr. Pats. 1970) (failure of opposer to sign at the end of the verification of a Notice of Opposition under Section 13 of the Trademark Act, although the Notice of Opposition itself was signed and the notary took opposer's oath to the fact that allegations in the Notice of Opposition were true); *Ex parte The Buehler Corp.*, 159 USPQ 192 (Comr. Pats. 1968) (failure to include all the necessary averments in a Notice of Opposition under Section 13 of the Trademark Act, although the notarial verification "subscribed and sworn to before me" was included).

support. *See* 15 U.S.C. §1051(a); 37 C.F.R. §§2.2(k)(1), 2.34(a)(1)(i), 11.18(b)(1); 2023 Show Cause Order, Exhibit X.

Respondents assert that these refusals do not demonstrate misconduct because specimen refusals are commonly issued. 2024 Response, pp. 61-62. However, the USPTO's evidence reveals that these specimens were refused as mockups or digitally altered, and thus constitute falsified evidence of use. Indeed, the OED Orders include stipulations as to the submission of falsified evidence, further demonstrating that Respondents' practice of submitting false specimens of use was part of their pattern of misconduct aimed at circumventing USPTO Rules. *See generally In the Matter of Kathy Q. Hao*, Proceeding D2021-14 (Apr. 27, 2022), available at https://foiadocuments.uspto.gov/oed/Final-Order-(Hao)-(D2021-14).pdf; *In the Matter of Elizabeth Yang*, Proceeding D2021-11 (Dec. 17, 2021), available at https://foiadocuments.uspto.gov/oed/Final-Order(Yang)-(D2021-11).pdf; *In the Matter of Di Li*, Proceeding D2021-16 (USPTO Oct. 7, 2021), available at https://foiadocuments.uspto.gov/oed/Li-Final-Order-(D2021-16).pdf.

**5. Respondents Misused USPTO.gov accounts**

Any party who uses USPTO systems, including the USPTO.gov website and electronic filing systems, is bound by both the Terms of Use for USPTO websites and the USPTO Trademark Verified USPTO.gov Account Agreement.

Under the Terms of Use, registration for, and use of, a USPTO.gov account is limited to the individual to whom the account is registered, and the registered individual is responsible for all activities occurring under that account and any sponsored accounts. Use of a USPTO.gov account to submit, access, or alter information exceeding one's authority not only breaches the Terms of Use, but may also violate other USPTO Rules including but not limited to 37 C.F.R. §§2.193(f) and 11.18(b).

The Show Cause Orders also explain how Respondents shared multiple USPTO.gov accounts, itself a Terms of Use violation, while misrepresenting their identities by entering the names of several U.S.-licensed attorneys in the signatory fields of TEAS forms. The conduct reveals further repeated violations of the Terms of Use because Respondents accessed USPTO systems with the intent to provide false information, including that of attorneys whose bar credentials they misused, in filings they were not authorized to submit on behalf of the trademark owners, all in circumvention of USPTO Rules. The USPTO concludes that Respondents used USPTO.gov accounts to submit, access, or alter information in thousands of records to conceal their involvement in prosecuting trademark applications due to their lack of authority to take these actions. 37 C.F.R. §§2.193 and 11.18(b).

By way of example, on February 9, 2022, one of the USPTO.gov accounts associated with Respondents was responsible for filing 256 separate CAR forms, most submitted within seconds or minutes of each other, with each submission allegedly directly signed by the owner or principal and originating from the same computer networks. *See* 2023

Show Cause Order Exhibit K. On this day alone, Respondents were responsible for at least 499 submissions, all allegedly directly signed, made within seconds of each other through the same computer network through a set of five USPTO.gov accounts operated by Respondents. Even though only five accounts were used, these submissions were signed using 463 different individual names in rapid succession all from the same computer network. On March 7, 2022, between 2:26 pm and 2:57 pm, a single USPTO.gov account submitted 32 TEAS forms with a particular U.S.-licensed attorney's credentials and direct entry of his electronic signature. *See* 2023 Show Cause Order, Exhibits V and W. Evidence available to the USPTO shows that these forms were filed from geographically distinct areas. This evidence, along with other examples covered in the 2022 and 2023 Show Cause Orders thus indicates Respondents shared access across multiple USPTO.gov accounts to improperly enter the electronic signatures of various U.S.-licensed attorneys and alleged applicants in violation of 37 C.F.R. §§2.193(a) and 11.18. Respondents subsequently submitted these "signed" trademark documents to the USPTO with the intent that the USPTO examine them and ultimately issue registrations.

**6. Respondents Submitted Trademark Documents to the USPTO for an Improper Purpose in Violation of Rule 11.18(b)(2).**

Respondents' pattern of behavior discussed above and in the 2022 and 2023 Show Cause Orders, demonstrates their widespread USPTO Rule violations. Respondents could not reasonably or in good faith have believed that their actions before the USPTO were proper or permissible. Respondents engaged in a coordinated and intentional effort to circumvent the USPTO Rules regarding representation and conceal their unauthorized practice of law and violations of 37 C.F.R. §§2.17, 11.5(b)(3) by repeatedly supplying false signatory and attorney information, and corresponding false or forged signatures, thereby violating 37 C.F.R. §§2.11, 2.193(d), and/or false information regarding statutory requirements for registration in tens of thousands of trademark filings.

Under USPTO Rules, any party who presents a trademark submission to the USPTO is certifying that "the paper is not being presented for any improper purpose" and "[t]he allegations and other factual contentions have evidentiary support." 37 C.F.R. §11.18(b); *see also* 37 C.F.R. §2.193(f) (noting that presentation of any document to the USPTO constitutes certification under 37 C.F.R. §11.18(b)). By presenting a paper to the Office, a person is certifying, among other things, the veracity of the information contained therein, that a reasonable inquiry has been undertaken to ensure that the paper is not being presented for an improper purpose, and that any allegations and other factual contentions have evidentiary support. 37 C.F.R. §11.18(b)(1)-(2).

Respondents knowingly and repeatedly misrepresented material information such as the attorney or signatory's involvement in prosecution and falsified signatures in violation of USPTO signature rules in thousands of trademark submissions in order to circumvent USPTO Rules regarding representation and conceal their unauthorized practice of law. Respondents therefore knowingly and repeatedly submitted trademark documents with false, fictitious, or fraudulent information, in violation of 37 C.F.R. §11.18(b)(1). Because

Respondents did so to conceal their unauthorized practice of law and in order to circumvent USPTO rules regarding signatures and representation, they made such submissions for an improper purpose, violating 37 C.F.R. §11.18(b)(2), which potentially subjects Respondents to sanctions. *See also* 37 C.F.R. §2.11(e). Respondents provided false attorney information in 37 C.F.R. §§2.11(e) and violated 11.18(b)(2), jeopardizing the validity of the application or registration and also resulting in the possibility of sanctions under 37 C.F.R. §11.18(c).[19] *See also* 37 C.F.R. §2.193(f); *Bang-er Shia,* Proceeding No. D2014-31, at *10-12 (USPTO Apr. 22, 2015) (Reconsideration Denied Aug. 1, 2016); *Zhang*, 2021 Commr. Pat. LEXIS 2, at *10, *26.

Therefore, Respondents' conduct, characterized by the widespread provision of false signatory and attorney information, and false signatures, as described in the Show Cause Orders and above, establishes that Respondents submitted documents containing false information for an improper purpose because they violated certain USPTO rules in order to circumvent the USPTO rules regarding representation, subjecting them to sanctions under Rule 11.18(c). *See Zhang*, 2021 Commr. Pat. LEXIS 2, at *8-10; 37 C.F.R. §§, 2.11(e), 11.18(b)(2).

### B. Respondents Arguments are Unpersuasive

In their 2024 Response, Respondents make several arguments about why sanctions cannot be imposed. None of these arguments dispute the USPTO's factual findings set out in the Show Cause Orders. Rather, they posit legal reasons why, in Respondents' view, sanctions are unavailable to address their conduct. Respondents argue that:

1. The USPTO lacks statutory authority to impose sanctions.

2. Seller Growth is not a party under Rule 11.18 and thus not subject to sanctions.

3. Trademark application and registration owners have not had an opportunity to participate in the process.

4. It is improper to impute Respondents' misconduct to owners of the applications and registrations.

5. Any sanctions authority is only available for activity occurring after the date of the 2022 Federal Register Notice.

6. The facts set out by the USPTO do not prove fraud.

7. Signature defects are merely technical in nature such that correction, not sanction, is the appropriate course.

[19] It may also result in referral of a practitioner's conduct to the Director of the Office of Enrollment and Discipline for appropriate action. *See* 37 C.F.R. §11.18(c)(4).

For the reasons discussed below, none of these arguments is availing.

**1. The USPTO has the statutory authority to sanction improper and fraudulent filing activity.**

As discussed above, *supra* pp. 3-4, the agency's statutory authority to impose sanctions flows from 35 U.S.C. §§3(a) and 3(b), which establish the Director's authority to provide policy direction for and manage the issuance of trademark registrations, including the authority to manage its dockets and impose appropriate sanctions necessary to address USPTO Rules or Terms of Use violations that impact USPTO proceedings. Further, the Office has been provided with separate broad authority under 35 U.S.C. §2(b)(2)(A) to establish regulations governing the conduct of proceedings in the Office. *See also* 15 U.S.C. §1123 (repeating the authority specifically for trademark matters).

Respondents are incorrect that the USPTO admitted it lacked authority to impose sanctions in its 2008 rulemaking. Contrary to Respondents' contentions, the agency explained that the change in language from the pre-2008 language was because it was "unnecessary that the regulation remind parties of any civil jeopardy to which they are subject for a violation of paragraph (b)(1)." Both 37 C.F.R. §11.18(b)(1), and the predecessor language generally relate to a party's potential *criminal* liability under 18 U.S.C. §1001. The availability of civil liability and/or ability to sanction misconduct is not the focus of Rule 11.18(b)(1).

Even so, the basis for sanctions primarily relates to Respondents' noncompliance and circumvention of 37 C.F.R. §11.18(b)(2) and the core statutory elements described in 15 U.S.C. §§1051(a)-(d). See also 37 C.F.R. §11.18(c). Respondents conveniently ignore 37 C.F.R. §2.193(f), which explicitly demonstrates how violations of Part 2 and/or Part 11 rules operate in practice:

> The presentation to the Office (whether by signing, filing, submitting, or later advocating) of any document by any person, whether a practitioner or non-practitioner, constitutes a certification under §11.18(b) of this chapter. Violations of §11.18(b) of this chapter may jeopardize the validity of the application or registration, and may result in the imposition of sanctions under §11.18(c) of this chapter. Any practitioner violating §11.18(b) of this chapter may also be subject to disciplinary action. See §11.18(d) and §11.804 of this chapter.

*See* 37 C.F.R. §2.193(f).

**2. Rule 11.18 allows for sanctions against Respondents.**

Respondents are also incorrect that they are not proper parties to which to direct the sanctions orders under Rule 11.18. As the agency explained when it adopted Rule 11.18, Rule 11.18 covers not just parties to the proceeding, e.g., applicants or registrants, and practitioners, but any party who presents a paper, e.g., a third-party filer, who would not be a "party" under the traditional definition of the word. *Changes to Representation of*

*Others before the United States Patent and Trademark Office*, 73 Fed. Reg. 47687, 47671 (Aug. 14, 2008) (adopting current 37 C.F.R. §11.18) (identifying a third-party filer as one to whom the provisions of Rule 11.18 apply). Therefore, as the filer presenting the papers in the trademark proceedings identified in Exhibit A, Respondents are a proper party subject to sanctions under Rule 11.18.

**3. The USPTO's proceeding does not violate the Administrative Procedures Act or due process.**

The USPTO finds Respondents' additional procedural challenges to be unfounded. As an initial matter, the rights of others, e.g., applicants and registrants who may wish to address findings made in these proceedings, are not the purview of Respondents. But even if those challenges were properly raised, they are unfounded.

Respondents argue in the 2024 Response that the proceedings here violate the Administrative Procedures Act (APA) and are an arbitrary and capricious exercise of authority.[20] Respondents ignore the detailed recitation of facts and corresponding rule violations outlined in the 2022 and 2023 Show Cause Orders and at least six OED orders where Respondents are explicitly named as parties engaged in the unauthorized practice of law and for repeated rule violations, including rules related to signatures and false or dubious claims of use in commerce. Additionally, the 2022 and 2023 Show Cause Orders give Respondents the requisite notice required under 37 C.F.R. §11.18(c) by explaining the Office's rationale for imposing sanctions and providing Respondents with ample opportunity to respond and explain why those sanctions should not be imposed.

**a. The USPTO's process afforded interested parties an opportunity to be heard.**

The USPTO's procedures satisfy the APA and due process by affording owners sufficient notice and opportunity to participate. *See* 5 U.S.C. §555(b). Contrary to Respondents' arguments, neither the APA nor the Federal Rules of Civil Procedure require that the owners be made a party to the proceeding. *See* 2024 Response, pp. 22-28.

First, Respondents' reliance on the Federal Rules of Civil Procedure to attack the proceeding is misplaced. The administrative sanctions proceeding is not governed by the Federal Rules of Civil Procedure, which apply in federal courts. The Federal Rules of Civil Procedure apply only to the USPTO to the extent that they have been adopted by the agency. *See* 37 C.F.R. Sec. 2.116(a).

Second, Respondents' challenge to the proceeding under the provisions in Rule 11.18 requiring notice and opportunity to respond before imposing sanctions also fails.

[20] Respondents also insert an unsubstantiated assertion that "The common denominator in the 'Trademark Decisions and Proceedings' sanctions database published by the USPTO is that the sanctioned parties all (or nearly all) are of Chinese origin." This assertion is factually incorrect as respondents in administrative proceedings include entities located in geographically diverse areas, not just China, and that the proceedings relate to USPTO Rule violations irrespective of an individual's location or origin.

Consistent with Rule 11.18 the USPTO has afforded Respondents—the parties subject to sanctions—an opportunity to respond before imposing sanctions. 37 C.F.R. §11.18.

Third, the USPTO's procedures likewise satisfy the due process requirements as it relates to the owners, who are not being sanctioned. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Using the correspondence email addresses of record, provided to the agency under 37 C.F.R. §2.23(b), the USPTO sent email notices informing owners of the proceeding and the process by which they could object or present arguments. This process satisfies the due process requirement for notice and opportunity to respond. *Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146-147 (4th Cir. 2014) (sending notice to the address of record registered in connection with vehicles).

With respect to the owners of the applications and registrations identified in Exhibit A, the relevant APA provision limits their rights as "interested persons" to participate in proceedings. *See id.* The APA instructs that an interested person may appear before the agency "for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding," "so far as the orderly conduct of public business permits." 5 U.S.C. §555(b). An interested party's right to appear is not "blindly absolute," *Easton Utilities Com. V. Atomic Energy Com.*, 424 F.2d 847, 852 (D.C. Cir. 1970), but must "dovetail[] with the orderly conduct of public business." *Nichols v. Board of Trustees*, 835 F.2d 881, 897 (D.C. Cir. 1987). Agencies have broad discretion to govern the participation of interested parties, which courts respect so long as the agency fashions equitable procedures to preserve the participation opportunities of interested persons. *See Nichols*, 835 F.2d at 897 (denials of requests for leave to intervene upheld when intervention would obstruct or overburden proceedings, among other reasons).

Here, the USPTO established an equitable process for interested parties to participate, considering owners' arguments against the inclusion of their application or registration in the proceeding via the Petition to the Director electronic form as well as an additional opportunity for registrants to respond directly to the USPTO's proposal to exercise its inherent authority to reconsider its registration decisions. See 2025 Show Cause Order and Notice and *see e.g.* U.S. Trademark Serial No. 87700689 (examples of notices issued to correspondence email addresses and uploaded to files for explanation of the process).[21] For the requests submitted in response to the 2025 Show Cause Order and Notice, the USPTO carefully considered the requests, whether submitted using the Petition to the Director form or an informal email communication.[22] *See* 2025 Reconsideration Order for summary of the requests and the USPTO responses. Having

---

[21] Owners of registrations were also afforded an opportunity to argue that the USPTO should not exercise its inherent authority to reconsider its registration decisions.

[22] *See, e.g.,* U.S. Trademark Serial Nos. 87700689, 87842816, 88366944, 88857046, 88887839, 90073056, 90082024, 90285762, 90294841, and 90388495.

established a process for interested parties to participate, the USPTO properly denied a request to intervene, because another opportunity to participate was available.

Prior to the 2025 Show Cause Order and Notice, the USPTO permitted participation as set forth in its Federal Register Notice, Trademark Administrative Sanctions Process, 87 Fed. Reg. 431 (January 5, 2022). For the 2022 and 2023 Orders, the agency sent a notice with information about this process to the correspondence email address of record and uploaded the notice to the records for each Serial Number identified in that order's Exhibit A. For each owner that followed the procedure, the USPTO issued a formal response that is viewable in the public record. *See, e.g.,* U.S. Trademark Serial Nos. 88093261, 88599264, and 90137153.

In addition, the USPTO received 143 email messages relating to 100 serial numbers identified in these Show Cause Orders, either requesting information or attempting to defend applications or registrations from being subject to these proceedings. Following review of these email messages, the USPTO responded, providing information about the process for interested party participation.[23]

Whether submitted under the process in place from 2022 to 2024 or after the 2025 Show Cause Order and Notice, each response was given due consideration, at times resulting in several serial or registration numbers being removed from the proceeding.[24, 25]

For the Serial Numbers which were not removed based on the owners' email requests, for the following reasons, the arguments presented did not justify removal of the particular Serial Numbers from the proceeding. Several of these messages acknowledged the alleged applicant or registrants' decision to contract with Respondents, some even including copies of their contracts as attachments.[26] Other messages sought to distance the alleged applicants or registrants from Respondents' conduct, at times arguing that they had no relationship with Respondents or that Respondents kept them in the dark, proffering nothing more than unsupported assertions and which did not demonstrate that Respondents were not, in fact, involved in submitting substantive documents to the USPTO.

* * *

[23] Alleged applicants, registrants, or their attorneys were provided with relevant information, including direct links to the Petition to Director form, consistent with the notice provided in 87 Fed. Reg. 431 (2021). Only two of the owners pursued the process.

[24] U.S. Trademark Serial Nos. 97284932, 97284938, 90260956, 90384911, 90292148, 90456544, 90491770, 90510147, 90636418, 90665782, 90368136, 97085802, 97175361, 90104921, 90443201, 90471714, and 90465063 were removed from the proceeding after review of the informal email correspondence.

[25] U.S. Trademark Serial Nos. 88933890, 88933942, 88867976, and 90125868 were removed after review of requests filed in response to the 2025 Show Cause Order and Notice.

[26] *See, e.g.,* U.S. Trademark Serial Nos. 88887839, 97365909, 97288628, and 90465104.

**b. Agency law principles do not prevent the USPTO from imposing sanctions.**

Respondents also contend that sanctions cannot affect the rights of the owners because such sanctions would effectively sanction the owners for Respondents' actions, contrary to principles of agency law, in violation of the APA and due process.[27] 2024 Response, pp. 29-35. Respondents argue that the owners should not be responsible for Respondents' misconduct.

Under the well-established rules of agency an agent's actions are imputed to their clients. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) (A principal "cannot . . . avoid the consequences of the acts or omissions of [a] freely selected agent."); *see also Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship.*, 507 U.S. 380, 397 (1993). There are circumstances, such as those here, under which a principal may be held accountable, even if the principal does not knowingly or freely acquiesce to the misconduct. *See Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir. 1977). It is appropriate to impute the misconduct of an agent to the principal and when there is significant prejudice or harm to the other parties or the judicial process. *C.f. Id.* at 122-123 (relief to the client appropriate because "little if any prejudice has befallen the other party.") Respondents' misconduct not only harms the integrity of the trademark registration process, but also harms the public who rely on the accuracy of the trademark register. *Supra* pp. 5-6. The identified trademark proceedings are replete with material misrepresentations of fact and manifest an intentional and years' long effort to deceive the USPTO regarding the legitimacy of various trademark submissions. Respondents acted as agents for the trademark owners. No exceptions apply that would exempt the owners from the impact of the misconduct conducted by their freely selected agents.

**4. Sanctions are not being imposed retroactively.**

Respondents further contend the that the USPTO's authority to impose sanctions is limited by the 2022 Federal Register Notice related to the Trademark Administrative Sanctions Process such that the USPTO may only sanction activity occurring after the Federal Register Notice. However, the Federal Register Notice only provides clarity and explanation of the process the USPTO employs in determining whether conduct is subject to sanctions. The Federal Register Notice is not required for the USPTO to conduct administrative sanctions proceedings, and its authority for imposing sanctions existed long before the conduct, described here and in preceding orders, began. *See* 73 Fed. Reg. 47650, 47653 (Aug. 14, 2008); 87 Fed. Reg. 431 (Jan. 5, 2022).

**5. The facts prove fraud.**

Respondents assert that sanctions are unwarranted because there is no evidence of fraud. Specifically, they argue that the USPTO inferred fraud based on facts that are more

[27] To be clear, the USPTO proposes to sanction only Respondents for their activity, and to the extent this order addresses the liability of the owners, it is to address the mischaracterizations of Respondents' arguments.

properly attributable to mistake because they were unaware of the signature requirements or relied on the advice of their U.S. counsel. In addition, Respondents attack the USPTO's characterization of their conduct as a scheme asserting that there was no deliberate knowledge or planning. Notably, they do not challenge the USPTO's evidence showing that the signatures in the identified trademark proceedings were improperly entered by Respondents.

First, Respondents are incorrect that the imposition of sanctions require a finding of fraud. Sanctions are justified because Respondents presented papers for an improper purpose, which as discussed above, the totality of the evidence establishes. 37 C.F.R. §§11.18(b)(2)(i), (c).

Second, although a showing of fraud is not necessary, the evidence here establishes fraud. Respondents' own statements on their websites, solicitations, and responses to the Show Cause Orders show their awareness of trademark prosecution as legal proceedings. *See* 2023 Show Cause Order, Exhibit B (consisting of archived screenshots of Respondents' webpages and social media page, where they note Respondents' experience in U.S. trademark registration services). Their own activities likewise contradict their claims of reliance on counsel's bad advice or that there was no deliberate knowledge or planning. *See, e.g.*, 2022 Show Cause Order, Exhibit D (including a solicitation email sent to attorneys indicating that Respondents had their own trademark prosecution team and merely wanted to use the names and bar credentials of U.S.-licensed attorneys in relation to the implementation of the U.S. Counsel Rule). In addition, during the course of their unauthorized practice of law, Respondents were continuously put on notice that they were participating in legal proceedings because each of Respondents' thousands of trademark submissions to the USPTO, submitted via TEAS, contained terms, conditions, averments, and warnings.

Although conduct need not rise to the level of fraud to warrant sanctions, the totality of evidence establishes Respondents' conduct does constitute fraud. The false information outlined herein was material and knowingly provided by Respondents to deceive the USPTO into examining illegitimate applications and granting or maintaining registrations that were not entitled to issue or be maintained if the full set of facts and circumstances were disclosed to the USPTO at the time the submissions were made. *See, e.g.*, *Bose*, 580 F.3d at 1243, (Fed. Cir. 2009) ("Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application."); *Chutter, Inc. v. Great Mgmt. Grp., LLC*, 2021 TTAB LEXIS 365, *25-27 (TTAB 2021), (holding that "willful" includes reckless behavior and "as a matter of law that reckless disregard satisfies the requisite intent for fraud on the USPTO in trademark matters"), *rev'd on other grounds*, 90 F.4th 1333 (Fed. Cir. 2023).; *Fuji Med. Instruments Mfg. Co., Ltd. v. Am. Crocodile Int'l Grp., Inc.*, 2021 TTAB LEXIS 270 (TTAB 2021); *see also Mini Melts*, 2009 U.S. Dist. LEXIS 148588 at *6 (forgery of signature on a declaration of use a false representation of material fact).

Such actions show an intentional effort to mislead the USPTO regarding Respondents' authority in these trademark proceedings, which supports a finding that such false

material representations of fact were made knowingly. *Look Cycle*, 2024 TTAB LEXIS 289 at *34 (explaining that fraud can be demonstrated by knowing violations, or those undertaken with reckless disregard for the truth). Respondents knowingly and repeatedly misrepresented the identities of signatories, misused attorney names and credentials, and systematically undermined the integrity of the trademark register. The conduct warrants a finding that Respondents have submitted thousands of documents for an improper purpose. *See Zhang*, 2021 Commr. Pat. LEXIS 2 at *10; 37 C.F.R. §11.18(b)(2). Such actions are also evidence of an intentional effort to mislead the USPTO, which supports a finding that these false material representations of fact were made knowingly, thus constituting fraud. *Id.* (citing *Chutter*, 2021 TTAB LEXIS 365, at *15 (*Bose*'s intent element satisfied by willful or reckless behavior)).

**6. Respondents' signature defects are not curable, technical defects.**

Respondents assert that the USPTO must permit the correction and ratification of the signature defects because they are merely technical rule violations. Response, pp. 58-61. Respondents rely on *Justh v. Nallapati* and patent cases[28] to assert that a technical signature defect in a signed submission does not result in invalidation or that the USPTO must permit ratification. However, these cases are not relevant because here, as explained above, the signature defects are substantive, not technical. *See* e.g., *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360, 1367 (Fed. Cir. 1999); *see also supra*, footnote 8, pp. 12-13.

The signature defects result from a practice of providing false signatory information to disguise the unauthorized practice of law to deceive the USPTO into treating improperly signed submissions as properly signed and valid. See discussion in Section II.A.3. Therefore, the defects are substantive, not technical. *Stelcore*, 2025 Commr. Pat. LEXIS 3, at *24-25. Respondents cannot credibly assert that they "exercised reasonable care to effect a proper execution," such that the Director could permit ratification. *See* 35 U.S.C. §26; *Weider*, 1981 Commr. Pat LEXIS 5, at *5. Because the defects in the signatures are not technical, they cannot be ratified.

## III. Sanctions Ordered

As explained above, the Director has authority to sanction those filing trademark submissions in violation of the USPTO Rules and has delegated to the Commissioner for Trademarks the authority to impose such sanctions and to otherwise exercise the Director's authority in trademark matters. 35 U.S.C. §3(a)-(b); 37 C.F.R. §11.18(c); *see also Zhang*, 2021 Commr. Pat. LEXIS 2, at *10, 23-24. The authority to issue

[28] E.g., *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360 (Fed. Cir. 1999); *Ajinomoto Co. v. Archer-Daniels Midland Co.,* 228 F.3d 1338 (Fed. Cir. 2000).

administrative sanctions has been further delegated to the Deputy Commissioner for Trademark Examination Policy.

In determining appropriate sanctions, the USPTO considers many factors, including any response received to the issued Show Cause Order, whether the conduct was willful or negligent, whether it was part of a pattern of activity or an isolated event, whether it infects the entire record or is limited to a single submission, whether the conduct was intended to injure a party, what effect the conduct has on the agency, and what is needed to deter similar conduct by others. *See* 73 Fed. Reg. 47650, 47653 (Aug. 14, 2008); 87 Fed. Reg. 431 (Jan. 5, 2022).

Based on the foregoing information and totality of evidence, the USPTO has reason to find that the most serious sanctions are warranted. Respondents' arguments, having been carefully considered and addressed above fail to show why sanctions proposed in the preceding Show Cause Orders should not be imposed. The evidence establishes that Respondents have engaged not only in the unauthorized practice of law but also in a widespread and coordinated pattern of activity intended to conceal their involvement in trademark matters and circumvent USPTO Rules. Respondents continually and consistently mispresented the identities of signatories in connection with declarations and affidavits supporting applications to register marks or maintain registrations, entered false electronic signatures of purported applicants, submitted fake specimens of use, and actively solicited the cooperation of multiple U.S.-licensed attorneys to further their scheme and improperly entered the attorneys' names, credentials and electronic signatures. Respondents also misused USPTO.gov accounts to conceal their misconduct.

The noted conduct warrants a finding that Respondents have submitted thousands of documents for an improper purpose. *See Zhang*, 2021 Commr. Pat. LEXIS 2 at *10; *see also* 37 C.F.R. §11.18(b)(2). Further, as discussed above, although conduct need not rise to the level of fraud to warrant sanctions, the finding of fraud, discussed above, warrants the most serious sanctions available. *See Zhang*, 2021 Commr. Pat. LEXIS 2 at *27 ("A scheme involving intentional circumvention of the USPTO Rules and defrauding the USPTO is the epitome of egregious misconduct warranting termination"). A trademark registration obtained by fraud is invalid and the underlying application is void. *See Grand Canyon W. Ranch, LLC v. Hualapai Tribe*, 78 USPQ2d 1696, 1697 (TTAB 2006) ("The case law is clear that holding an application to be void is an appropriate remedy when the pleaded ground [] is fraud . . . .").

As discussed above, the evidence demonstrates that the conduct infects the entirety of the trademark proceeding because all initial application forms and other trademark submissions made through USPTO.gov accounts registered to or used by Respondents were filed in violation of multiple USPTO Rules. These submissions contained fatal defects such as improper signatures or false representations of material fact, including use claims supported by fake specimens. 37 C.F.R. §§2.193(f), 11.18(c); *see also Zhang*, 2021 Commr. Pat. LEXIS 2 at *27-31, (noting that providing false signatures in addition to other misconduct may result in sanctions up to, and including, termination of pending

proceedings before the Office). Thus, registrability determinations made based on averments supported by false or improperly entered signatures could not be relied upon to support registration. *Hipkins,* 1991 Pat. App. LEXIS 14, at *10-13 (BPAI 1991); *Cowan*, 1990 Commr. Pat. LEXIS 24, at *5-6. Respondents' conduct impaired the USPTO's ability to perform its statutorily-mandated duty of registering marks that comply with U.S. trademark law, including USPTO Rules. Respondents' conduct has infected thousands of applications, resulted in false and fraudulent submissions that render the applications void ab initio, and adversely affected the integrity of the federal trademark registration process.

In light of Respondents' pervasive conduct, the USPTO is unable to rely on any submissions made by any of the Respondents in any trademark record. As a result, the serial numbers identified in Exhibit A to this order, filed by Respondents, are fatally defective because they contain materially false information. Thus, the submissions associated with the serial numbers listed in Exhibit A are effectively void. *Id.*

The Director has the authority to sanction relevant parties that are in violation of USPTO Rules and has delegated to the Commissioner for Trademarks the authority to impose such sanctions and to otherwise exercise the Director's authority in trademark matters. 35 U.S.C. §3(a)-(b); 37 C.F.R. §11.18(c); *see also Zhang*, 2021 Commr. Pat. LEXIS 2 at *10, 14-18. The authority to issue administrative sanctions orders has been further delegated to the Deputy Commissioner for Trademark Examination Policy. Accordingly, in light of Respondents' rule violations discussed herein and in the Show Cause Order, the following sanctions under 37 C.F.R. §11.18(c) are warranted and are hereby imposed:

(1) Permanently preclude Respondents from submitting trademark-related documents on behalf of Respondents or others;

(2) Strike or otherwise give no weight to all trademark-related documents submitted by Respondents;

(3) Deactivate any USPTO accounts in which contact information related to Respondents appears, and take action to prevent Respondents from creating or activating further accounts;

(4) Block future financial transactions from credit cards used to pay filing fees associated with the improper submissions and/or associated with Respondents;

(5) Terminate all pending proceedings identified by Serial Numbers in Exhibit A because they contain submissions filed by Respondents[29];

(6) For trademark proceedings later found to involve Respondents or containing submissions filed by Respondents, continue to strike documents, remove

[29] Copies of this Order for Sanctions will also be placed in records where an application or registration has been abandoned, cancelled, surrendered, or misassigned.

information, deactivate accounts, block financial transactions, and terminate proceedings.

The sanctions ordered herein are immediately in effect and are ordered without prejudice to the USPTO taking any subsequent appropriate actions to protect its systems and users from Respondents' continued improper activity, including issuing additional orders or referring Respondents' conduct to relevant state and federal law enforcement agencies.

So ordered,

Users, Cotton, Amy
Digitally signed by Users, Cotton, Amy
Date: 2025.08.06 08:55:31 -04'00'

Amy P. Cotton
Deputy Commissioner for
Trademark Examination Policy

August 6, 2025
Date

on delegated authority by

Coke Morgan Stewart
Acting Under Secretary of Commerce for Intellectual Property and
Acting Director of the United States Patent & Trademark Office

Exhibits A - E